Laurence M. Rosen, Esq.
THE ROSEN LAW FIRM, P.A.
236 Tillou Road
South Orange, NJ  07079
Telephone: (973) 313-1887
Facsimile: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT SNELLINK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| Plaintiff, | COMPLAINT |
| vs. | CLASS ACTION |
| UNIVERSAL TRAVEL GROUP, INC., JIANGPING JIANG, YIZHAO ZHANG, and JING XIE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Albert Snellink, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Universal Travel Group, Inc. ("UTA" or the "Company"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendant's

Class Action Complaint for Violation of the Federal Securities Laws

public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUBSTANTIVE ALLEGATIONS

1.      This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired the securities of UTA during the period from January 19, 2010 to April 12, 2011, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa, 28 U.S.C. § 1391(b).

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the NYSE.

## PARTIES

6.     Plaintiff Albert Snellink, as set forth in the attached PSLRA certification, purchased UTA securities through the NYSE at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant UTA is a Nevada corporation headquartered in Shenzen, China.   The Company and its wholly owned operating subsidiaries purport to engage as a travel service Company in the People's Republic of China through the Internet, customer representatives, and kiosks.   During the Class Period the Company's common stock was listed on the NYSE under ticker "UTA."

8.     Defendant Jiangping Jiang ("Jiang") at all relevant times herein was the Company's Chief Financial Officer and Chairman of the Board.

9.     Defendant Yizhao Zhang ("Zhang") served as the Company's Chief Financial Officer between August 17, 2009 and August 16, 2010; when Zhang resigned.

10.     Defendant Jing Xie ("Xie") was appointed Chief Financial Officer to replace Zhang.   Xie had previous stints as the Company's CFO.

Class Action Complaint for Violation of the Federal Securities Laws

11.     Defendants Jiang, Zhang, and Xie are collectively the "Individual Defendants".

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of UTA during the Class Period. Excluded from the Class are the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

13.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company's common stock was actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by UTA or its transfer agent, and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

14.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of the Company; and

(c)  to what extent the members of the Class have sustained damages, and the proper measure of damages.

17.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18.     The Class Period begins on January 19, 2010 when the Company issued a press release announcing the Company's acquisition of Hebei Tianyuan Travel Agency ("HTT") for approximately $4.2 million.  The announcement states in relevant part:

**Universal Travel Group Announces Acquisition of Hebei Tianyuan Travel Agency**

SHENZHEN, China, January 19, 2010 – Universal Travel Group (NYSE: UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that it has entered into a Letter of Intent to acquire Hebei Tianyuan Travel Agency ("Tianyuan") for RMB 29 million (approximately $4.2 million), 80% of which shall be paid in cash and 20% of the consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after completion of acquisition audit on Tianyuan by the Company.

Founded in 1999, Tianyuan was the first authorized travel agency in the Hebei Province in China.  In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu and Lushan National Park, both domestic tourist attractions listed on the UNESCO World Heritage Site.  Tianyuan was the organizer of the International Economy & Culture Communication Forum sponsored by the local government and the exclusive organizer of the Young Journalist Summer Camp sponsored by the Yanzhao Evening Paper. The Company believes that Taiyuan's exclusive service with these regional sites and unique partnership with the government provide Tianyuan with an advantage to be a market leader in travel services in the region. Unaudited full year 2009 revenues and net income for Tianyuan are approximately $7.2 million and $0.7 million, respectively.

"This acquisition represents a further step in our expansion strategy of increasing our geographic coverage over the most popular national tourist destinations in China such as Mount Lu ," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer.  "We look forward to leveraging our experience in providing high quality, comprehensive travel services with Tianyuan's unique regional tourism resources and we are confident that this

acquisition will stregnthen [sic] Universal Travel Group's domestic market presence and increase the Company's profitability in 2010."

19.     On January 26, 2010 the Company issued an announcement that it had acquired Zhengzhou Yulongkang Travel Service Company ("ZYT") for approximately $5.7 million.   The Company claimed that ZYT in the fiscal year ended had revenue of $10.5 million and net income of $.86 million.    The announcement states in relevant part:

**Universal Travel Group Announces Acquisition of Zhengzhou Yulongkang Travel Service Company**

SHENZHEN, China, January 26, 2010 – Universal Travel Group (NYSE: UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services via the Internet and customer service representatives, announced today that it has entered into a Letter of Intent to acquire Zhengzhou Yulongkang Travel Service Company ("Zhengzhou Yulongkang") for RMB 39 million (approximately $5.7 million), 90% of which to be paid in cash and 10% of the purchase consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after the completion of acquisition audit on Zhengzhou Yulongkang by the Company.

Zhengzhou Yulongkang was founded in 2000 in Zhengzhou, Henan Province. Zhengzhou Yulongkang has a team of experienced and knowledgeable tour guides that take tourists on more than ten proprietary regional routes and hundreds of points of interest. Zhengzhou Yulongkang is a one-stop shop, providing comprehensive travel services and maintaining long-term cooperation with transportation agents, travel destinations, hotels, and air ticket agencies. In addition, Zhengzhou Yulongkang has developed outdoor team building programs in 2004 based on its chosen travel destination, Wengcheng Waterfall. Unaudited 2009 revenue and net income will be about $10.5 million and $0.86 million, respectively.

"Our recent acquisitions of travel service providers of national tourist destinations demonstrate our commitment to expand into domestic travel markets and raise awareness of our Company and the services we provide in these targeted [sic] regions.  Zhengzhou Yulongkang's addition will further enhance Universal Travel Group's core business segments and complement our packaged tour business," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "Through these acquisitions, we will strengthen our product portfolio, geographic coverage and brand awareness to build a larger network of customers. We believe we are strategically positioned to be in the forefront of the rising China travel market."

20.    On March 5, 2010 the Company filed with the SEC its annual report for the fiscal year ended December 31, 2009, signed by defendants Jiang and Zhang.  Filed with the 10-K were separately executed Sarbanes-Oxley Act of 2002 certifications by defendants Jiang and Zhang, attesting to, among other things, the accuracy and completeness of the 10-K.

21.    The 10-K described the HTT acquisition as follows:

On January 19, 2010, we entered into a letter of intent to acquire Hebei Tianyuan Travel Agency ("Tianyuan") for RMB 29 million (approximately $4.2 million), 80% of which shall be paid in cash and 20% of the consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after completion of acquisition audit on Tianyuan by the Company. Founded in 1999, Tianyuan was the first authorized travel agency in the Hebei Province in China. In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu and Lushan National Park, both domestic tourist attractions listed on the UNESCO World Heritage Site. Tianyuan was the organizer of the International Economy & Culture Communication Forum sponsored by the local government and the exclusive organizer of the Young Journalist Summer Camp sponsored by the Yanzhao Evening Paper. We believe that Taiyuan's exclusive service with these regional sites and unique partnership with the government provides Tianyuan with an advantage to be a market leader in travel services in the region.

22.     The 10-K described the e ZYT acquisition as follows:

On January 26, 2010, we entered  into a letter of intent to acquire Zhengzhou Yulongkang Travel Service Company ("Zhengzhou Yulongkang") for RMB 39 million (approximately $5.7 million), 90% of which to be paid in cash and 10% of the purchase consideration in shares of the Company's common stock. The purchase consideration may be subject to adjustment after the completion of acquisition audit on Zhengzhou Yulongkang by the Company. Zhengzhou Yulongkang Travel Service Company was established in 2000 in Zhengzhou, Henan Province of China. The company currently has a management team of 25 people and over 60 tour organizers and guides. The Company provides comprehensive travel services and maintains long-term cooperation relations with transportation agents, travel destinations, hotels, and air ticket agencies. Its regional tour routes include "Charming Tibet", "Winter Hot Spring", "Passion Ski Trip", etc. Zhengzhou Yulongkang Travel Service Company has received a series of industry and corporate awards from 2003 to 2006.

23.     On March 31, 2010 the Company issued an announcement stating the completion of its acquisition of HTT and ZYT.   The announcement states in relevant part:

Universal Travel Group Completes Previously Announced Acquisitions and Updates Guidance

SHENZHEN, China, March 31 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that the Company has completed the previously announced acquisitions of Huangshan Holiday Travel Service Co., Ltd. ("Huangshan Holiday"), Hebei Tianyuan International Travel Agency Co., Ltd. ("Tianyuan"), and Zhengzhou Yulongkang Travel Agency Co., Ltd. ("Yulongkang").

The Company acquired Huangshan Holiday for RMB 20 million (approximately $2.9 million), of which 80% is in cash and 20% in stock; Tianyuan for RMB 30 million (approximately $4.4 million), of which 80% is in cash and 20% in stock; and Yulongkang for RMB 39 million (approximately $5.7 million), of which 90% is in cash and 10% in stock.

Huangshan Holiday provides comprehensive travel services in the Huangshan District in the Anhui Province of China. Huangshan, a national geological park and UNESCO World Heritage Site, is one of China's most popular travel destinations, with over eight million tourists annually. Huangshan Holiday provides guided and self-guided package tours and airline and hotel reservation services for both leisure and business travelers. Huangshan Holiday serves as the exclusive hotel reservation agency for several major online travel service providers in China and has an over 70% share of the mid- to high-end hotel reservation market in the Huangshan Tourism District.

Tianyuan was founded in 1999 and was the first authorized travel agency in the Hebei Province in China. In addition, Tianyuan is the exclusive provider of travel agency services to Mount Lu and Lushan National Park, a domestic tourist attraction listed on the UNESCO World Heritage Site. Tianyuan's exclusive service with these regional sites and unique partnership with the government provide Tianyuan with an advantage to be a market leader in travel services in the region.

Yulongkang provides comprehensive travel services and maintains long-term cooperation agreements with transportation agents, travel destinations, hotels, and air ticket agencies. In addition, Zhengzhou Yulongkang has developed outdoor team building programs based on its main travel market which is the Wengcheng Waterfall.

"We are pleased to have completed our recently announced strategic acquisitions," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "These acquisitions of travel service providers for national tourist destinations in China demonstrate our commitment to expanding into additional domestic travel markets and raise the awareness of our Company and the services we provide in these targeted regions. Through these acquisitions we are strengthening our product portfolio, geographic coverage and brand awareness to build a larger network of customers. Overall, we believe these acquisitions will help us to strategically position Universal Travel Group to be in the forefront of the growing China travel market."

The Company also announced that the financial results from these three acquisitions will be included in the Company's quarterly report for the three months ended March 31, 2010. In addition, as a result of the synergy from these three acquisitions, for full year 2010, the Company expects to achieve a growth rate range of between 45% and 55% in both revenues and net income,

Class Action Complaint for Violation of the Federal Securities Laws

excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation.

24.    On May 4, 2010 the Company issued an announcement stating its intention to acquire four travel agencies for $19.5 million, including Kunming Business Travel Agency ("KBT"), Sanxi Jun Yang Travel Agency Co. ("SJT") and Shandong Shi Ji Aviation Development Co. ("SVC").   The announcement states in relevant part:

> Universal Travel Group Announces Intention to Acquire Four Travel Agencies for a Total Purchase Consideration of $19.5 Million
>
> SHENZHEN, China, May 4 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA - News) ("Universal Travel Group" or the "Company"), a leading travel services provider in China, today announced that the Company has entered into letters of intent to acquire four travel agency businesses in China -- Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun), Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jinyang"), Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century") -- for a total purchase consideration of $19.5 million. The combined unaudited 2009 revenue and net income for the four travel agencies were $23.0 million and $3.0 million, respectively. The final purchase consideration each of these companies may be subject to adjustment after completion of due diligence by the Company.
>
> Shanxi Jinyang was founded in 1988 in Taiyuan, Shanxi Province and is one of the largest travel agencies in Shanxi Province in terms of tourist volume and revenues. Shanxi Jinyang provides comprehensive travel services and has good business relationships with travel destinations, hotels, and air ticketing agencies. Unaudited 2009 revenue and net income were $5.6 million and $0.4 million, respectively. We plan to acquire Shanxi Jinyang for $2.3 million, 90% of which shall be paid in cash and 10% in shares of the Company's common stock.
>
> Tianjin Hongxun was founded in 1999 in Tianjin and is a leading airline ticket agency in its region, with supplementary hotel, train and car

reservation service offerings. Tianjin Hongxun has a customer database of approximately 400,000 that consists of both individual tourists and businesses and has an average daily volume of 100,000 inbound calls and over 2,000 tickets issued. Unaudited 2009 revenue and net income were $3.7 million and $0.9 million, respectively. We plan to acquire Tianjin Hongxun for $5.9 million, 65% of which shall be paid in cash and 35% in shares of the Company's common stock.

Kunming Business Travel was founded in 1993 in Kunming, Yunnan Province and is the premier golf travel service agency in its region. Kunming Business Travel has partnerships with seven golf clubs and provides services, including reservations, event planning, hosting business trips and golf competitions. Kunming Business Travel is the only professional golf travel service provider in the Yunnan Province. Unaudited 2009 revenue and net income were $9.4 million and $0.9 million, respectively. We plan to acquire Kunming Business Travel for $5.7 million, 90% of which shall be paid in cash and 10% in shares of the Company's common stock.

Shandong Century, founded in 1996, has the largest electronic ticket reservation platform and is the largest airline ticket agency in the Shandong Province. Its major business lines include air ticketing, hotel reservation, train ticketing, group tours, and business cargo services. Shandong Century has a call center with 100 customer service representatives and an average daily volume of 2,500 ticket reservations. Unaudited 2009 revenue and net income were $4.4 million and $0.8 million, respectively. We plan to acquire Kunming Century for $5.6 million, 65% of which shall be paid in cash and 35% in shares of the Company's common stock.

"We are continuing to capitalize on the fast growing China travel market through organic growth and strategic acquisitions," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "After the acquisition of these four travel agencies, we will have expanded our geographic coverage to ten provinces in mainland China and the variety of services we offer our clients. We are confident these acquisitions, once complete, will have a positive impact on our top and bottom line in 2010."

25.    On May 11, 2010 the Company filed with the SEC its first quarter ended March 31, 2010 results on Form 10-Q, signed by defendants Jiang and Zhang.  Filed with the 10-Q were separately executed SOX certifications by Jiang

and Zhang, attesting to the accuracy of the 10-Q.  As the acquisitions announced immediately above, the 10-Q states in relevant part:

> On March 4, 2010, the company announced that it has entered into letters of intent to acquire four travel agency businesses in China – Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun"), Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jingyang"), Kunming Business travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century") – for a total purchase consideration of $19.5 million. The combined unaudited 2009 revenue and net income for the four travel agencies were $23.0 million and $3.0 million, respectively. The final purchase consideration each of these companies may be subject to adjustment after completion of the diligence by the Company.
>
> \*          \*          \*
>
> Recently in May 2010, we also announced our intention of acquiring four more travel agency businesses in the People's Republic of China – Tianjin Hongxun Aviation Agency Co., Ltd. ("Tianjin Hongxun), Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jinyang"), Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel"), and Shandong Century Aviation Development Co., Ltd. ("Shandong Century").
>
> We believe that we are able to improve the sales volume and operation efficiency of these new acquisitions, and on the other hand, they will also help lift the sales volume and operation efficiency of our existing subsidiaries.

26.    On June 22, 2010 the Company announced the closing of a $20 million common stock offering.  According the announcement, the "proceeds from this financing will be used to fund the cash portion of its four recently announced acquisitions and for working capital to expand the Company's core business segments."

27.    On June 30, 2010 the Company announced that it completed the acquisitions of KBT and SJT.  The announcement states in relevant part:

Universal Travel Group Completes Acquisitions of Shanxi Jinyang Travel Agency and Kunming Business Travel Agency

SHENZHEN, China, June 30 /PRNewswire-Asia-FirstCall/ -- Universal Travel Group (NYSE:UTA) ("Universal Travel Group" or the "Company"), a leading travel services provider in China offering package tours, air ticketing, and hotel reservation services, today announced that the Company has completed the previously announced acquisitions of Shanxi Jinyang Travel Agency Co., Ltd. ("Shanxi Jinyang") and Kunming Business Travel Agency Co., Ltd. ("Kunming Business Travel") for $8.0 million, of which 90% was paid in cash and 10% in stock. The combined audited 2009 revenue and net income for the two travel agencies was $15.3 million and $1.3 million, respectively.

Shanxi Jinyang was founded in 1988 in Taiyuan, Shanxi Province and is one of the largest travel agencies in Shanxi Province in terms of tourist volume and revenues. Shanxi Jinyang provides comprehensive travel services and has established business relationships with local travel destinations, hotels, and air ticketing agencies.

Kunming Business Travel was founded in 1993 in Kunming, Yunnan Province and is the premier golf travel service agency in its region. Kunming Business Travel has partnerships with seven golf clubs and provides services, including reservations, event planning, hosting business trips and golf competitions. Kunming Business Travel is the only professional golf travel service provider in the Yunnan Province.

With the closing of these two acquisitions, assuming no further dilutive effect from financings or acquisitions, the Company now expects to achieve between $145.0 million and $155.0 million in revenue, $27.0 million and $28.0 million in net income, and $1.35 and $1.40 in diluted EPS in the fiscal year 2010, excluding the effect of non-cash charges related to the change in fair value of derivative liabilities and stock-based compensation.

"We are very pleased to have closed the first two of our recently announced four acquisitions on schedule," said Ms. Jiangping Jiang, Chairwoman and Chief Executive Officer. "These acquisitions of travel service providers will help us to further expand our geographic coverage in the fast growing domestic travel market. We believe Universal Travel Group's comprehensive service platform and broad customer reach will enable us to further improve their earnings and profit margins."

28.     On August 10, 2010 the Company filed with the SEC its second quarter ended June 30, 2010 results on Form 10-Q, which provided a description of the Company's acquisitions noted above.   Filed with the 10-Q were separately executed SOX certifications by Jiang and Zhang, attesting to the accuracy of the 10-Q.

29.     On August 17, 2010 the Company filed an 8-K with the SEC announcing that defendant Zhang had resigned as CFO, and that defendant Xie would replace Zhang as CFO.

30.     On September 1, 2010 the Company filed an 8-K with the SEC announcing that its independent auditor Acqavella, Chiarelli, Shuster, Berkower & Co., LLP had been dismissed by the Company, and replaced by Goldman Kurland Mohidin ("GKM").

31.     On October 5, 2010, the announced that its auditor GKM had resigned, and that the Company had appointed Windes & McClaughry Accountancy Corporation ("Windes") as the Company's auditor.

32.     On November 15, 2010 the Company filed with the SEC its third quarter ended September 30, 2010 results on Form 10-Q, signed by defendants Jiang and Xie.   The 10-Q provided a description of the Company's acquisitions noted herein.   Filed with the 10-Q were separately executed SOX certifications by Jiang and Xie, attesting to the accuracy of the 10-Q.

**TRUTH BEGINS TO EMERGE**

33.    On March 8, 2011 a research firm called Glaucus Research Group issued a report setting forth numerous red flags of fraud at UTA: http://www.glaucusresearch.com/GlaucusResearch-Universal_Travel-Group-UTA-Strong_Sell-March_8_2011.pdf (the "Report").

34.    The Report noted the following:

(a)    UTA is fabricating its publicly filed financial statements. Its actual underlying business is far smaller than its SEC filings indicate.

(b)    UTA's business model is not credible. For example, UTA claims to have earned $110 million in net revenue in the first three quarters of 2010 on an advertising budget of $247,449 in the highly competitive leisure travel market. Its competitors spend five to 10 times more on marketing as a percentage of net revenue, casting doubt on the authenticity of UTA's revenue and net income.

(c)    UTA has a deficient and unpopular website, boasts only a minimal brick-and-mortar retail operation and has no kiosks under its control to directly sell to consumers. Yet the company's return on assets and asset turnover figures suggest it is the most efficient company in the leisure travel space, consistently trouncing the competition.

(d)    UTA's website is barely functional (as can be seen in our videos here, here, here, here and here), offers a terrible user experience and receives only a small fraction of the traffic of its Chinese competitors, despite the fact that the company holds itself out as an online travel service provider.

16

(e)    UTA is a serial capital raiser, repeatedly returning to western investors for cash despite supposedly having, according to its balance sheet, ample cash on hand, which sits unused in an account earning .36% in interest per year. UTA is lying about the amount of cash on its balance sheet, as is evidenced by its inexplicably low interest income.

(f)    UTA has destroyed shareholder value through a series of dilutive acquisitions. The company's acquisition targets had much smaller earnings than UTA claimed in its public filings.

(g)    UTA's purported relationship with Agoda, a subsidiary of Priceline.com, is overstated.

(h)    UTA has burned through 4 low-quality auditors and 3 CFOs in 5 years.

35.    As to acquisitions described above, the Report identified numerous misstatements in the Company's public statements to investors about the nature and quality of the Company's business acquisitions during the Class Period. Particularly, the financial statements filed by the Company's acquired companies with PRC authorities list merely a fraction of the revenue, net income, and assets, when compared to the Company's public disclosures made to investors.    The following chart summarizes the material discrepancies:

Class Action Complaint for Violation of the Federal Securities Laws

| Acquired Companies in 2010 | | Zhengzhou Yu Long Kang Travel Agency Co (ZYT) | Hebei Tian Yuan International Travel Agency Co (HTT) | Kunming Business Travel Agency Co (KBT) | Shanxi Jin Yang Travel Agency Co (SJT) | Shandong Shi Ji Aviation Development Co |
|---|---|---|---|---|---|---|
| All figures are in USD, using forex rate of $1=6.85 RMB | Date of Acq. | March 2010 | March 2010 | June 2010 | June 2010 | June 2010 |
| | Purchase Price | $5,700,000 | $4,400,000 | $5,700,000 | $2,300,000 | $5,600,000 |
| UTA Claimed Figures for 2009 | Revenue | $10,500,000 | n/a | $9,400,000 | $5,600,000 | $4,400,000 |
| | Net Income | $800,000 | n/a | $900,000 | $400,000 | $800,000 |
| AIC Filings - 2009 | Revenue | $58,394 | $102,797 | $1,671,128 | $734,868 | $494,755 |
| | Net Income | $4,978 | ($101,687) | $42,483 | $1,866 | $16,747 |
| | Assets | $84,433 | $336,333 | $687,543 | n/a | $438,149 |
| UTA Claimed Net Income Multiple paid | Net Income | 7.1 | n/a | 6.3 | 5.8 | 7.0 |
| Actual Aquired Multiples Paid | Revenue | 97.6 | 42.8 | 3.4 | 3.1 | 11.3 |
| | Net Income | 1145.0 | n/a | 134.2 | 1232.6 | 334.4 |
| | Assets | 67.5 | 13.1 | 8.3 | n/a | 12.8 |

36.     The Report caused the Company's stock price to fall, 7.6% on March 9, 2011 or to $5.71 per share.

37.     The Company did not respond to these allegations with a press release or an SEC filing, and the Company's stock ultimately dropped to $5.18 per share on March 14, 2011.

38.     On March 15, 2011 in an effort to apparently instill confidence about the accuracy of the Company's financial statements, the Company issued a press release entitled "Universal Travel Group, Inc. Confirms it Will Release Fiscal Year 2010 Audited Financial Results in Addition to Fourth Quarter Financial Results" on March 30, 2011.

39.     On March 29, 2011 after market-close, the Company shocked the market when it announced that it would have to postpone its earnings conference call "to Later in 2011."

Class Action Complaint for Violation of the Federal Securities Laws

40.     This announcement caused the Company's stock to fall on March 30, 2011 from $5.39 per share to $4.33 per share, or 19.6%, on extraordinary volume. The Company's stock continued to fall the next two trading days, closing at $4.19 per share on April 1, 2011.

41.     On April 12, 2011 trading in the Company's stock was inexplicably halted.

42.     On April 14, 2011 the Company filed an 8-K with the SEC announcing that its independent auditor, Windes had resigned.   According the 8-K Windes noted several reportable events calling into question material aspects of the Company's internal controls and accuracy of its financial statements.   The 8-K states in relevant part:

Item 4.01        Changes in Registrant's Certifying Accountant

On April 10, 2011, Universal Travel Group (the "Company" or "we") received notification that its principal independent accountants, Windes & McClaughry Accountancy Corporation ("Windes") had resigned its engagement with the Company effective April 9, 2011. Windes was engaged by us on September 30, 2010. Windes' resignation as the Company's principal independent accountant was accepted by the Audit Committee on April 11, 2011.

The following reportable disagreements occurred within the period from Windes' engagement through the date of its resignation, which if not resolved to the satisfaction of Windes, would have caused it to make a reference to the subject matter of the disagreements in connection with its report.

**Windes had informed the Company in its resignation letter that it was no longer able to complete the audit process. Windes stated this was due in part to Management and/or the Audit Committee being non-**

**responsive, unwilling or reluctant to proceed in good faith and imposing scope limitations on Windes' audit procedures.**

**Windes also stated that Windes had lost confidence in the Board of Directors' and the Audit Committee's commitment to sound corporate governance and reliable financial reporting.**

Prior to its resignation, **Windes raised the following issues (some of which may be considered to be disagreements) encountered during the audit, including issues related to the authenticity of confirmations, a loss of confidence in confirmation procedures carried out under circumstances which Windes believed to be suspicious; issues concerning the lack of evidence of certain tour package contracts and related cash payments.**

As a result, Windes had requested authority to perform additional audit procedures and the above issues to be addressed by an independent Audit Committee investigation. Windes stated in its resignation letter that, in its view, the Company was not willing to proceed in good faith with the course of action requested by Windes. Windes also stated in its resignation letter that in its opinion, Windes believed that certain statements made by Management and the Audit Committee, between March 29, 2011 and its resignation letter, impaired its independence as it related to the Company.

We disagree with Windes' reasons for resignation, in particular Management and/or the Audit Committee's purported unwillingness or reluctance and/or non-responsiveness to proceed in good faith and imposition of scope limitations on Windes' audit procedures, the Company's purported unwillingness to proceed in good faith with courses of action requested by Windes and Management and the Audit Committee's purported impairment of Windes' independence in relation to the Company a result of certain statement made by them.

We believe that we have acted responsively, prudently and in good faith to address the numerous issues raised by Windes during the entire audit process. Windes disagrees. Management, the Audit Committee and Windes attempted to resolve these disagreements to no avail.

The Company has authorized Windes to respond fully to the inquiries of its successor accountant regarding the subject matter of each of such disagreements.

Class Action Complaint for Violation of the Federal Securities Laws

Windes has not provided any opinions, qualification or modification to our financial statements for each of the past two fiscal years. The Company does not have, as otherwise disclosed above, any other disagreements or reportable events as described under Item 304(a)(1) of Regulations S-K.

### Applicability of Presumption of Reliance:

### Fraud-on-the-Market Doctrine

43.     At all relevant times, the market for UTA's common stock was an efficient market for the following reasons, among others:

(a)     The Company's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, UTA filed periodic public reports with the SEC and the NYSE;

(c)     UTA regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)   UTA was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

44.   As a result of the foregoing, the market for the Company's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in the Company's stock price.  Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices, and a presumption of reliance applies.

**Applicability of Presumption of Reliance:**

*Affiliated Ute*

45.   Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).    All that is necessary is that the facts withheld be material in the sense that a reasonable investor

might have considered the omitted information important in deciding whether to buy or sell the subject security.

### FIRST CLAIM
#### Violation of Section 10(b) of
#### The Exchange Act and Rule 10b-5
#### Promulgated Thereunder Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase UTA's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for UTA's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

49.    Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of UTA as specified herein.

39.    Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

40.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available.  Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the

Company's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by overstatements and misstatements of the Company's financial condition throughout the Class Period, if the Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

41. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of UTA's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by the Defendants during the Class Period, Plaintiff and the other members of the Class acquired UTA common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

42. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known

the truth regarding UTA's financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their UTA's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

43.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of UTA's securities during the Class Period.

44.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    The Individual Defendants acted as controlling persons of UTA within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to

influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

47.    In particular, each Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

48.    As set forth above, the Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

49.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

50.   This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Awarding such other and further relief as the Court may deem just and proper.

1

## <u>JURY TRIAL DEMANDED</u>

2

Plaintiff hereby demands a trial by jury.

3

Dated: April 15, 2011                    Respectfully submitted,

4

THE ROSEN LAW FIRM, P.A.

5

6

7

Laurence M. Rosen, Esq.

8

236 Tillou Road

9

South Orange, NJ  07079
Telephone: (973) 313-1887

10

Facsimile: (973) 833-0399
Email: lrosen@rosenlegal.com

11

12

Counsel for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint for Violation of the Federal Securities Laws