UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


SNELLINK,                        .
                                 . CASE NO.
                                   11-CV-02164
            Plaintiff,           .
                                 . Newark, New Jersey
vs.                              . July 17, 2012
                                 .
                                 .
UNIVERSAL TRAVEL GROUP, INC., .
et al.,                          .
            Defendants.          .

                    TRANSCRIPT OF HEARING
         BEFORE THE HONORABLE MADELINE COX ARLEO
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For Albert
Snellink, Van Hove      LAURENCE ROSEN, ESQ.
Group:                  The Rosen Law Firm, PA
                        236 Tillou Road
                        South Orange, NJ 07079


For Hans                DAVID A. ROSENFELD, ESQ.
Spliethoff:             Robbins Geller Rudman &
                        Dowd LLP
                        120 East Palmetto Park Road, Ste.
                        500
                        Boca Raton, FL 33432

                        PETER S. PEARLMAN, ESQ.,
                        Cohn Lifland Pearlman Herrmann
                        & Knopf, LLP
                        Park 80 West-Plaza,
                        One 250 Pehle Avenue, Suite 401,
                        Saddle Brook, NJ 07663

                        BRETT D. STECKER, ESQ.,
                        Weiser Law Firm
                        222 Cassatt Avenue
                        Bernyn, Pennsylvania 19312


(Appearances continued)

```
For the Defendants:        RICHARD H. ZELICHOV, ESQ.
                           Katten Muchin Rosenman LLP 2029
                           Century Park East Suite 2600 Los
                           Angeles, CA 90067-3012 (310)
                           788-4680
                           (Appeared telephonically)

Audio Operator:

Transcription Company:     KING TRANSCRIPTION SERVICES
                           901 Route 23 South,
                           Center Suite 3
                           Pompton Plains, N.J.  07444
                           (973) 237-6080


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

Proceeding                    3

```
 1        (Proceeding Commenced at 3:32:08 PM)

 2

 3        THE COURT:  Counsel this is Judge Arleo we

 4   just  -- we just went on the record in my courtroom in

 5   the matter of Snellink v. Universal Travel.  Can I

 6   have appearances please, starting with the gentlemen

 7   in the courtroom.

 8        MR. PEARLMAN:  Your Honor Peter Pearlman,

 9   Cohn Lifland, Pearlman Herrmann and Knopf appearing on

10   behalf of Oneke Shebraut and Holding (phonetic) and

11   Schteig H.S.B.,(phonetic) The Spliethoff Group.  And

12   with me at the counsel table are my  co-counsel David

13   Rosenfeld from Robbins Geller, Rudman and Dowd and

14   Brett Stecker from the Weiser Law Firm.

15        Mr. Rosenfeld has made an application for pro

16   hoc vice admission.  And I would ask Your Honor,

17   although it has not been acted upon yet, it was made

18   recently I think yesterday actually, I'd ask Your

19   Honor to permit Mr. Rosenfeld to make the argument

20   this morning -- this afternoon.  I beg your pardon.

21        THE COURT:  Okay.  Any opposition?

22        MR. ROSEN:  No, Your Honor.

23        THE COURT:  Okay.  I'll -- He's so admitted

24   and I'll sign the order today.

25        MR. PEARLMAN:  Thank you very much Your
```

1  Honor.

2          THE COURT:  Okay.

3          MR. ROSEN:  Good afternoon Your Honor,

4  Lawrence Rosen on behalf of the Van Hove Group and

5  Albert Snellink.

6          THE COURT:  Okay.  I'd ask you just, Mr.

7  Rosen, to use the microphone to keep your voice up.

8  Because we have -- fortunately we only have a

9  recorder, we don't have a court report.

10         And counsel on the phone.  Counsel?  Hold on.

11  Counsel, this  is Judge Arleo I don't know if you --

12  you -- we just put appearance in the record for the

13  Plaintiffs.  Can you state your name for the record

14  please?

15         MR. ZELICHOV:  Good afternoon Your Honor

16  Richard Zelichov from Katten Muchin Roseman on behalf

17  of Universal Travel Group.

18         THE COURT:  Okay thank you.  All right,

19  gentleman have a seat.  Just to put this in a little

20  bit of background this motion before the Court today

21  is the motion of the Van Hove Group and the -- is

22  Splitterhoff (phonetic)?

23         MR. PEARLMAN:  Speilhoff (phonetic) I believe

24  Your Honor.

25         THE COURT:  Speilhoff.

Proceeding                                    5

1            MR. ROSENFELD:  Spliethoff.

2            MR. PEARLMAN:  Oh, Spliethoff, I beg your

3    pardon.

4            THE COURT:  Spliethoff Group -- Spliethoff

5    Plaintiff to be appointed lead Plaintiff in the above

6    action.  And I'm just going to put a little background

7    on the record.

8            The suit arises out of a series of

9    acquisition by the Universal Travel Group of other

10   companies in 2010.  The positive impact of which was

11   allegedly exaggerated by U.T.G. to the S.E.C., the

12   media and investors.

13           In March of 2011 an independent research

14   agency published a report illuminating the alleged

15   misrepresentations.  As such the company's stock price

16   dropped dramatically and numerous investors suffered

17   loss.

18           On April 15th of 2011 Plaintiff Investor

19   Albert Snell -- Snellink filed a Class Action against

20   U.T.G. alleging it violated the Act of -- the Exchange

21   Act of 1934.

22           On June 2nd 2012 as per this Court's

23   instruction, Movant the Van Hove Group and Movant the

24   Spliethoff entities filed motions to appointed lead

25   counsel, respectively.  And that is the motion that is

Proceeding                                         6

1    before the Court today.

2              So, let me tell you a couple of observations.

3    And -- and observations I was really just like --

4    counsel for the Spliethoff group to address is to me

5    it's pretty clear to everybody under the -- under the

6    Cendant case that the threshold inquiry is who

7    suffered the greatest loss.  And if that -- and if

8    they -- otherwise satisfy the numerosity and -- and --

9    and adequacy requirements of -- of Rule 23.

10             So, be begin looking at the losses.  So we

11   have this -- we have a group and we have Spliethoff.

12   And there was some discussions in the briefs back and

13   forth as to what the -- what the aggregate loss is of

14   each group.

15             And the numbers are a little bit different

16   whether we take a 71 cents a share price, which was

17   the amount -- or a zero percent share price, which was

18   the amount -- the date that, I guess one was the date

19   that the stock sale was halted and the 71 cents was

20   sometime after that.  And whether I use the 71 cents

21   a share price or a zero percent share price it appears

22   that under both analysis that -- that the Van Hove

23   Group has a greater loss.

24             And it looks like -- so they have the greater

25   loss and they otherwise satisfy adequacy and -- and

                              Proceeding                    7

1    typicality.  The presumption has to be rebutted.  And

2    I'm not sure that they're the appropriate lead

3    Plaintiff.

4           And a lot of your brief was devoted to the

5    argument that you have the single loss.  And I don't

6    think that's in dispute, right that you have the

7    greatest single loss.  But the analysis that I think

8    I'm constrained by under the Third Circuit teaching

9    in <u>Cendant</u> is -- is that that really has to be

10   rebutted.  And it can't be rebutted just by saying, we

11   suffered more signally than you guys suffered

12   collectively.

13          So, that's really like -- like to focus your

14   argument on this afternoon, because that's what has

15   the greatest concern for me here today.

16          MR. ROSENFELD:  Certainly, Your Honor.  May I

17   approach the -- here?

18          THE COURT:  Yeah, I prefer, if it's okay with

19   you, you can argue just from your table.

20          MR. ROSENFELD:  Okay.

21          THE COURT:  That's -- That's preferable for

22   me.

23          MR. ROSENFELD:  Just make sure I'm being

24   heard for the record.

25          THE COURT:  Okay.

Proceeding                                8

1            MR. ROSENFELD:  Thank you Your Honor --

2            THE COURT:  Feel free to pull it further --

3    closer to you too.  That's great.

4            MR. ROSENFELD:  Okay.  Does that work?

5            THE COURT:  Perfect.

6            MR. ROSENFELD:  Thank you Your Honor.  Again,

7    David Rosenfeld from Robbins Geller on behalf of the

8    Spliethoff Entities.

9            Your Honor the P.S.L.R.A. does direct that

10   the Court point as lead Plaintiff the investor who

11   represents the largest financial interest and also

12   otherwise adequate and typical.  And of course the

13   question is, who is the investor that represents the

14   largest financial interest?  And what was the whole

15   purpose behind Congress enacting the Private

16   Securities Litigation formats in creating these

17   standards?

18           Your Honor the whole purpose was that they

19   wanted to insure that investors who suffered a large

20   financial interest -- who suffered large financial

21   losses were sufficiently motivated to adequately

22   represent counsel in these types of cases.  And

23   that's why it's important to consider that if a group

24   of investors are seeking to be aggregated to create

25   the largest financial interest, that there is a

Proceeding                                          9

1  proper group that is being proposed.   And that is

2  exactly what was considered by the Third Circuit in

3  Cendant.

4        And the Third Circuit did an analysis of the

5  types of groups and set forth a number of standards

6  what the Court is to consider in determining whether

7  or not a group is proper or not.  And there's a

8  number of District Court decisions in this court

9  house that subsequently interpreted Cendant and held

10 that the factors that were considered by Cendant, such

11 as whether or not there was a preexisting

12 relationship among the relationship that have cobbled

13 together now, to "represent the largest financial

14 interest."   That is something that we think has

15 happened here.

16        And clearly, if the court were to look at

17 the individual interests of the Spliethoff Group,

18 which is roughly, again, there's a -- I guess there's

19 somewhat of a debate whether you use the zero dollar

20 hold price or the 71 cent hold price for the shares

21 that were retained.  Which I don't think makes a

22 difference again.  Because a the end of the day the

23 Spliethoff entity would have a larger individual

24 financial interest under either one of those

25 analyses.

Proceeding                    10

1            THE COURT:  And conversely the Van Hove

2    group has a greater collective interest either

3    analysis.

4            MR. ROSENFELD:  Correct.  But the Spliethoff

5    entities have a real financial interest of 227,000

6    whereas the Van Hove Group you have one individual

7    with 16,000, another with 59,000, another with 48,000

8    61 --

9            THE COURT:  Let me just stop you for a

10   minute.  I hear you.  I understand all that.  But

11   here's what Cendant says about that.

12            "More to this junction that we disagree with

13   those Courts that have held the statute invariably

14   precludes a group of unrelated individuals from

15   serving as a lead Plaintiff.  The statute contains no

16   requirement mandating the members of proper group be

17   'related' in some manner.  It requires only that such

18   group fairly and adequately protect the interest of

19   the -- of the -- of the Class."

20            "We do not intimate that the extent of the

21   prior relationships and their connection between the

22   members of the moving group should not properly enter

23   into calculus as to whether they would fairly and

24   adequately protect this Class.  But it is this test,

25   not one of relatedness which the court should be

1   concerned."

2          So, they're saying that unrelated entities

3   can be -- are -- are appropriate.  In fact they --

4   they say that they reject courts that say you can't

5   have unrelated individuals.

6          MR. ROSENFELD:  Well, as a black mark -- as

7   a black line, Your Honor.  You know, as a matter of

8   law that's -- that's what they say.  They say are

9   certain limited exceptions.  And if I can refer to

10  Your Honor to page 267 of the Cendant opinion.  Right

11  at the start of that page is where it says;

12          "If, for example, the Court were to determine

13  that the Movant 'group' with the largest losses had

14  been created by the efforts of lawyers hoping to

15  ensure their eventual appointment as lead counsel, it

16  could well conclude, based on this history, that the

17  members of that 'group' could not be counted on to

18  monitor counsel in a sufficient manner."

19          And Your Honor I -- I respectfully submit

20  here that this proposed group is exactly the group

21  --

22          THE COURT:  But, what do you base -- in other

23  words they cite where -- where that, you know, you use

24  cobble together language.

25          MR. ROSENFELD:  Right.

Proceeding                          12

1              THE COURT:  And they said we would conclude

2    based on that history that the group cannot be

3    counted on to monitor counsel in a sufficient

4    manner.  They have affidavits that say we are educated

5    folks and we -- we can work together with this

6    counsel.

7              You make the argument that it's just a group

8    cobbled together and that they can't adequately

9    protect the interest of the Class.  But I don't see

10   any affidavits.  I see no factual information other

11   than an argument that seems to be unsupported.

12             MR. ROSENFELD:  Well, Your Honor if I can

13   direct your attention to the case cited in our brief

14   called Teran v. Subaye.   That's S-U-B-A-Y-E and

15   Teran is T-E-R-A-N, which is before Judge Buchwald in

16   the Southern District of New York.  In which the

17   exact same type of group was proposed by the Rosen Law

18   Firm.

19             THE COURT:  Of course that's not a Third

20   Circuit case.

21             MR. ROSENFELD:  Correct.

22             THE COURT:  Right?  So that's really not --

23   I'm not sure what the second -- is, but I'd like to

24   get back to my --

25             MR. ROSENFELD:  It's -- it's --

Proceeding                              13

1          THE COURT:  Go ahead.

2          MR. ROSENFELD:  Wait Your Honor, I just note

3  that the declarations that were submitted there were

4  the exact same types of declaration -- it presented

5  the same exact content as the declarations that were

6  submitted here.

7          And there, Judge Buchwald said well clearly

8  these people had no relationship, they didn't know

9  each other existed prior to meeting with their

10  counsel.  And their counsel clearly put them together

11  with for the purposes of trying to create a large

12  financial interest.

13          And there's no other rational explanation.

14  And certainly nothing has been offered here as to why

15  these five -- or six really, different individuals

16  who had nothing to do with each prior to this lawsuit

17  have all of a sudden showed up and said well, now we

18  have the large financial interest because we take

19  each one of our smaller financial interest and you

20  add them up together all of a sudden we have a big

21  number.

22          And Your Honor, there's nothing -- you know

23  if that was the case then we certainly -- if we

24  thought that was appropriate we certainly would have

25  reached out to Garrett Wyatt (phonetic) who was one of

1   the investors who filed the motion for relief --

2   Plaintiff, back in June of 2011.  And if we thought it

3   was appropriate we could have added his financial

4   interest and presented it to the Court now when we

5   filed our motions last month.  And said, hey Judge we

6   have the biggest financial interest now.  But it's not

7   appropriate.

8           The Third Circuit says it's not appropriate.

9   It says that our circumstances, which it would be

10  appropriate, but certainly here it's not.  Especially

11  when you have an individual investor with a very, very

12  large loss, marginally below the collective loss of

13  the Van Hove Group.

14          THE COURT:  Okay.  Anything further?

15          MR. ROSENFELD:  I would refer Your Honor to

16  the In Re Opnext  decision which is in this

17  District.  The Able -- Able Laboratories decision

18  which is in this District.  In which each one of them

19  cautioned against appointing investors who have been

20  cobbled together, simply for the fact that the law

21  firm is seeking to aggregate the size of their

22  financial interest to appoint their group as lead

23  Plaintiff.

24          And I would just note that we've cited a

25  number of cases in our brief which talk about where

Proceeding                          15

1   you have a single investor who is larger than any of

2   the individual members of a competing group.  That the

3   Court's defer to that single investor, since it really

4   represents that largest financial interest.  Which is

5   what Congress wanted to have serving as lead Plaintiff

6   in these types of cases.

7           THE COURT:  Let me ask you though, do you

8   have any facts that you can put before the Court to

9   suggest that this group of un -- un -- that this group

10  of unrelated individuals cannot fairly and adequately

11  protect the interest of the Class?

12          There's no cert -- did I miss any

13  certifications or any factual information?  Because I

14  -- I have certifications from -- from the -- from the

15  Plaintiffs.  I have nothing -- no factual

16  certifications from you other than your arguments that

17  because they're unrelated that they must be cobbled

18  together by the lawyers.  And if they're cobbled

19  together by the lawyers they somehow cannot be

20  expected to fairly and adequately protect the interest

21  of the Class.

22          MR. ROSENFELD:  Well, I would not a couple of

23  things -- a couple of things Your Honor.  Number one,

24  they've made no representations about their

25  experiencing in monitoring counsel.  Certainly not --

1          THE COURT:  I'm going to ask you -- I asked

2   you three times.  I just want to make sure for the

3   record.  Have you put anything before the Court and by

4   way of certifications or affidavits, factually, about

5   the ability of this group to fairly and adequately

6   protect the interest of the Class?  There's nothing,

7   right?

8          MR. ROSENFELD:  We've made arguments, Your

9   Honor.

10          THE COURT:  That's -- that's all I'm asking

11   counsel.  I've asked it three times.

12          MR. ROSENFELD:  There's no supplemental

13   submissions --

14          THE COURT:  There's no submission.

15          MR. ROSENFELD:  -- other than our brief.

16          THE COURT:  So, the brief is just arguments

17   that -- is there anything in their certifications that

18   you take issue with factually?

19          MR. ROSENFELD:  Their declaration I take an

20   issue with Your Honor.

21          THE COURT:  What -- what part of their

22   declarations?

23          MR. ROSENFELD:  That -- that joint

24   declaration.  That's exactly the same representations

25   that were found to be inadequate by Judge Buchwald,

1  number one.

2          THE COURT:  Right, no I'm asking a

3  different question.  Is there anything that you

4  challenge --

5          MR. ROSENFELD:  There inability --

6          THE COURT:  -- factually in their

7  affidavits?

8          MR. ROSENFELD:  Their inability to provide

9  that document in a timely manner.  They first supplied

10 it --

11         THE COURT:  What document?

12         MR. ROSENFELD:  Their joint declaration.

13         THE COURT:  All right, is there any -- I'll

14 ask it again.  Is there anything stated in the fact

15 -- factually in the affidavit that you take issue

16 with?

17         MR. ROSENFELD:  Any representations?

18         THE COURT:  Uh huh.

19         MR. ROSENFELD:  I don't think it really says

20 anything that there is take issue with, because

21 they've made no representation about their experience

22 in supervising counsel which is somewhat important

23 when you have a group of investors who really just

24 being overseen by counsel.

25              As -- and that's precisely the concern the

Proceeding                              18

1   courts have.  That you're having a number of

2   individual investors, with small financial interests

3   in this outcome of this case that are being -- if

4   counsel in charge -- I'm telling them what -- what's

5   to be done, what needs to be done, how things are

6   getting done and none of them seem to have a large --

7   a sufficiently large financial interest to act on

8   their own and insure that the Class is protected

9   here.

10          THE COURT:  Okay.

11          MR. ROSENFELD:  Okay, thank Your Honor.

12          THE COURT:  Thank you.  Mr. Rosen?

13          MR. ROSEN:  Yes, Your Honor.  Your Honor

14   under the Cendant case once the group or lead -- lead

15   Plaintiff Movant with the largest financial interest

16   has been identified, the Defendant -- I'm sorry the

17   other Movants have to provide proof that they're

18   unable to represent fairly and adequately the interest

19   of the Class.

20          And the Cendant case -- and I think Your

21   Honor was going in that direction in -- in your

22   questioning.  It -- it specifically says proof is

23   required, proof, not speculation.  And in fact in the

24   Cendant case there was this allegation that they had

25   chosen their lawyers because one of the law firms had

Proceeding                          19

1  donated money to the -- to the investment -- one of

2  the investment funds.  There were three -- there are

3  three unrelated -- it was an un -- three unrelated

4  investment funds that had gotten together as a group

5  in Cendant by the way.

6          And the court said simply -- the Third

7  Circuit said simply saying that there's some --

8  something untoward here because there was a -- a --

9  one of the law firms had made a donation in the past.

10 That's not proof.  That -- you know, and even though

11 it was -- they -- they -- the Third Circuit

12 acknowledged and the District Court had acknowledged

13 that there had been a donation.  There was no

14 evidence, not a declaration.  And they made note of

15 this in the decision.  There was no declaration, no

16 facts, nothing to suggest that the decision to -- to

17 hire those law firms was made on any other reason than

18 merit.

19          And so, the same thing is here, Your Honor.

20 Counsel for the Spliethoff entities said it himself.

21 We think it happened here.  We think.  Or he also said

22 nothing has been offered here.  It was his own words.

23 Nothing -- and that's true, nothing has been offered

24 to rebut -- nothing factual has been offered to rebut

25 the presumption that has attached to the Van Hove

1   Group's application.  And in fact we have five well

2   qualified people; a professional investor, a P.H.D. in

3   economics who worked at the U.N., a C.P.A., a small

4   business owner.

5        I mean these -- these are well qualified

6   people.  They've chosen -- and this is one of the --

7   one of the things that <u>Cendant</u> looks at, they've

8   chosen capable counsel.  We have a lot of experience

9   doing these -- cases.  We've got about seven very good

10  decisions on motions to dismiss.  We've settled

11  several -- cases already.  I could give you a list of

12  two or three that was just recently settled.

13       So, all of the dictates of <u>Cendant</u> we have --

14  we meet.  The -- the group is capable of -- of -- of

15  fulfilling the responsibility.  Their interest are

16  aligned.  They've got adequate counsel.  And there's

17  -- there's no evidence of any conflict of interest at

18  all.

19       So, we've -- we've met the -- we've met the

20  dictates -- dictates of <u>Cendant</u>.  And there being no

21  evidence at all to rebut this presumption, we

22  respectfully request the Court appoint the Van Have

23  Group.

24       THE COURT:  Thank you.  Anything you'd like

25  to add?  Go ahead.

1            MR. ROSENFELD:  Your Honor if I just may note

2    that I can cite you a handful of decisions that I have

3    in my -- that have here are post-<u>Cendant</u>, which

4    consider -- which direct the Court to consider and --

5    and I'll quote,  and this is  -- this is from the <u>In</u>

6    <u>Re Opnext Securities Litigation</u> by Judge Pisano.  And

7    it's also citing to the <u>Smith v. Supreme Specialties</u>

8    case.  In which it says;

9            'In deed the P.S.L.R.A. permits a group of

10   persons to service the Plaintiff and there's no

11   limitation that the group include related

12   individuals," which is what Your Honor has been saying

13   until now.

14            "However, the group must be capable of

15   fairly and adequately protecting the purported Class'

16   interest.  To determine if a group could fairly and

17   adequately represent those interest a court should

18   consider; One, whether the individuals in question

19   had a preexisting relationship; Two, the extent of

20   that relationship; Three, whether the group was

21   created by the efforts of lawyers for the purpose of

22   obtaining the Plaintiff status; and Four, whether the

23   group is too large to adequately represent the

24   Class."

25            "Thus, a group -- a court may reject a group

1    if it appears that the group has been created for the

2    purpose of serving as lead Plaintiff."

3              And here, Your Honor, it was a motion for

4    reconsideration which the Court said, that even though

5    there -- I think there were a number of married

6    couples involved, the court, nonetheless said -

7              THE COURT:  How big was the group?

8              MR. ROSENFELD:  It was four.  Two -- two sets

9    of married couples, I believe.

10             The court rejected that group and said there

11   hasn't been an adequate showing.  That they had a

12   preexisting relationship.  What the relationship was

13   and whether the group was created for the purposes of

14   -- of aggregating their financial interest.

15             And the Smith v. Supreme Specialties case is

16   -- cites -- makes that same point as well.  And

17   again these are all post -- post-Cendant.  And the

18   rest are not from the Southern District -- from the

19   District of New Jersey, but there are legions of

20   other cases that have made that exact point, Your

21   Honor.

22             THE COURT:  Thank you.  Anything you'd like

23   to add?

24             MR. ROSEN:  Yes, Your Honor, I would like to

25   address the Opnext case.  It -- that decision is -- is

1   and out -- I can't really explain it.  It doesn't

2   really follow faithfully Cendant.  Because what you

3   had in that case is you had two married couples who

4   had known each other for 15 years.  So, they had a 15

5   year preexisting relationship, family friends, two

6   married couples.  Clearly they didn't get married in

7   order to participate in the litigation or become

8   friends.

9        So the decision there it really -- it

10  doesn't -- it doesn't follow -- it doesn't follow

11  Cendant.  And I -- I can't explain it.  And it really

12  shouldn't be followed.  It's not -- it's not

13  precedential in this -- in this -- here.  And it --

14  it's not -- it doesn't follow -- it simply doesn't

15  follow Cendant.

16       The types of situations that the Third

17  Circuit was referring to when they talked about groups

18  being cobbled together, what they were talking about

19  is just what Mr. Rosenfeld mentioned, a situation

20  where one lead Plaintiff Movant files -- files a

21  motion for lead Plaintiff.  Another files another one.

22  A third files a third.  And then Movant one and two

23  say, hey let's get together after motions are filed

24  and let's beet the third guy.  You know, that's what

25  Razorfish (phonetic) was talking about, the case that

Proceeding                      24

1  they cite.

2          You know, so that's -- that's not what

3  happened here.  This is a situation -- the

4  declaration, you know proven that these -- these

5  people sat down, discussed what they wanted to do.

6  This is not several law firms jockeying together.  You

7  know this -- this is a single law firm with -- you

8  know and -- and -- and five clients to the single law

9  firm.

10          So, it's really not what Razorfish was

11  talking about and what the Third Circuit was -- was

12  intimating when they discussed, you know.  They

13  specifically say unrelated groups are permitted.

14  What's important is that they have the ability and the

15  stand to represent the Class vigorously.  And these

16  people all lost substantial sums of money.  They're

17  all capable, qualified professionals.  And they have

18  produced evidence showing that they intend to

19  vigorously prosecute this action.   Thank you.

20          THE COURT:  Okay.  Thank you.  I'll begin

21  with a little background on the P.S.L.R.A. and the

22  Cendant standard.

23          The motion here turns on the interpretation

24  of the Private Securities Litigation Reform Act, a law

25  that complements the Exchange Act of 1934 and codifies

1   a process for appointing lead counsel in a Class

2   Action.

3              The P.S.L.R.A. states that the most

4   adequately Plaintiff is the Movant with the largest

5   financial relief sought by the Class and who other --

6   who otherwise satisfy the requirements of Rule 23,

7   that's adequacy and typicality.

8              The Movant that satisfies these criteria is

9   the presumption -- is the presumptive lead

10  Plaintiff.  The presumption can be rebutted if only a

11  competing lead Plaintiff disproves that the

12  presumptive lead Plaintiff does not satisfy the

13  requirements of 23.

14             And undisputed in this Circuit that <u>In Re</u>

15  <u>Cendant</u> is a seminal case interpreting the

16  P.S.L.R.A.'s method of selecting a lead Plaintiff.

17  In <u>Cendant</u> the Third Circuit noted that the

18  reviewing court must first identify the Movant seeking

19  "the largest financial relief."  That's 264 <u>F</u>.2d at

20  262.

21             The P.S.L.R.A. does not specify a "hard and

22  fast" rule for determining largest loss, but states --

23  state that the courts have approvingly considered the

24  number of shares that the Movant purchased during the

25  punitive Class period, the total net funds expended by

1  the Plaintiffs and the approximate loss suffered by

2  the Plaintiffs.

3          Once identified the courts must then evaluate

4  whether the Movant with the largest financial loss can

5  satisfy Rule 23.  Here the relevant requirement of 23A

6  or subsections 3 and 4, which compel lead Plaintiff --

7  which compel that a lead Plaintiff's claim must be

8  typical and that they can adequately represent the

9  Class in this litigation.

10          In <u>Cendant</u> the Third Circuit interpreted the

11  language of the P.S.L.R.A. and held that the potential

12  lead Plaintiff with the greatest financial loss only

13  make a prima facie case that it satisfies Rule 23.  In

14  evaluating whether the claims are typical the court

15  held that the court should consider whether the

16  circumstances of the Movant with the largest loss are

17  markedly different on the -- or -- or legal theory

18  upon which claims are based different from the claims

19  upon which the other member of the Class will be

20  based.

21          In evaluating whether the largest loss

22  movement -- Movant satisfies Rule 23 adequacy

23  requirement the Court should consider whether it has

24  the ability in -- to represent the claims of their

25  Class vigorously, whether it has obtained adequate

1   counsel and whether there's a conflict between the

2   Movant's claims and those asserted on behalf of the

3   Class.

4         Additionally, the <u>Cendant</u> court highlighted

5   other factors that can influence whether the largest

6   loss Movant can adequately represent the Class.

7   Whether it has picked competent and negotiated fair

8   fee arrangement.  Whether -- if it is a group of

9   investors if the group is too large to manage,

10  effectively.

11        And lastly, the <u>Cendant</u> -- in <u>Cendant</u> the

12  Third Circuit explains that it disagrees with other

13  Circuits that found unrelated individuals cannot

14  properly constitute a group of investors and

15  appropriate become the Class Action.

16        As I -- as I cited earlier the Third -- as I

17  said early the Third Circuited noted that if the group

18  was cobbled together by attorneys solely for the

19  purpose to secure their eventual appointment as lead

20  counsel, a court could rule that an investor group in

21  that circumstance may not be counted to monitor

22  counsel in a -- in a sufficient manner.

23        And let's talk a little bit about the

24  preliminary analysis which is the loss here.  And

25  Circuit talks -- <u>Cendant</u> talks, and I noted earlier,

1  that unrelated entities can be viewed as -- as a group

2  and as lead Plaintiff.  And, so the Court begins by

3  looking at the loss, alleged by the -- the two

4  competing Plaintiff here.

5          And the Van Hove Group under any analysis has

6  the largest loss here.  Whether we take the 71 cents a

7  share loss evaluation or the zero cents a share loss

8  evaluation.  In either scenario the -- the Van Have

9  Group has the largest loss.  Under the 71 cents a

10 share the Van Have Group suffered a potential loss or

11 an arguable loss of 230,607 and the Spliethoff Group

12 is 206,431.  At zero cents a share Van Hove is 255 and

13 Spliethoff is 227.

14         So, it -- it is clear to me that the Van Have

15 Group is the Movant who suffered the largest loss.

16 Although admittedly the Van Hove does constitute a

17 group of investors.

18         The Court then must look at whether they

19 satisfy Rule 23 requirement for typicality and

20 adequacy.  And -- and again, I just want to read a

21 little bit from -- from <u>Cendant</u>.  It says;

22         "In conducting the initial inquiry as to

23 whether the Movant and the -- with the largest loss

24 satisfy typicality and adequacy the court may --

25 consider the pleadings that have been filed, the

1   Movant's application, and any information that the

2   court requires to be submitted.  Keeping with the

3   statutory text, however, the court generally will not

4   consider at this stage any arguments by other

5   members of the punitive Class.  Rather such

6   allegations should be dealt with in terms of assessing

7   whether lead -- lead Plaintiff's presumption has been

8   rebutted."

9           So, that is -- that is the teaching of

10  Cendant.  And I'm going to go further to -- a little

11  bit further down on page 265 the Cendant court

12  explains;

13          "Making the initial adequacy assessment in

14  this context the Court should also consider two

15  additional factors.  Because one of the lead

16  Plaintiff's most important function is to select and

17  retain lead counsel.  One of the best ways for a court

18  to insure that it will fairly and adequately represent

19  the interest of the Class it inquire whether the

20  Movant has demonstrated a willingness and ability to

21  select competent counsel and to negotiate a reasonable

22  retainer agreement with counsel."

23          "Thus a court might conclude that the Movant

24  with the largest loss could not surmount the threshold

25  adequacy, -- legal experience, or sophistication

1  intended to select as lead counsel a firm that was

2  plainly incapable of undertaking the

3  representation."

4         "We stress, however, that the question at

5  this stage is not whether the Court would approve the

6  Movant's choice of counsel, or the terms of its

7  retainer agreement, or whether another Movant may have

8  chosen better lawyers and negotiated a better a fee

9  agreement.  Rather the question is whether the choice

10  is made by the Movant with the largest losses are so

11  deficient as to demonstrate it will not fairly and

12  adequately -- adequately represent the interest of the

13  Class."

14         And there's -- and I am satisfied based on

15  the pleadings, the affidavits before me, that as a

16  threshold issue the Van Hove Group has met that

17  standard.  And again, it's not whether another law

18  firm would be better, the question is whether the

19  choices made by the Movant with the largest loss was

20  so deficient as to demonstrate it will not fairly and

21  adequately represent the interest of the Class.

22         The Van Hove Group satisfies Rule 23

23  requirements for typicality and adequacy.  In terms of

24  typicality the Van Hove Group claims appear to be

25  identical to the general claims in the complaint and

1   are invested in -- and it's really not really, I don't

2   think, in much dispute in this motion -- invested in

3   the U.T.G. based on reports of growth expansion.  The

4   reports revealed to be fraudulent and its investments

5   were substantial.

6           In opposition the Spliethoff entities offer

7   no evidence that the Van Hove Group's theories of

8   liability are in conflict with those of the punitive

9   Class members.  Therefore I'm satisfied that

10  typicality is met here.

11          I'm also satisfied that adequacy is met under

12  -- in this context.  Considering its alleged

13  substantial financial losses as result of U.T.G.

14  fraudulent -- alleged fraudulent behavior the Van Hove

15  Group clearly has the incentive to vigorously go to

16  get its claims.

17          According to Attorney Rosen's declaration the

18  Van Hove has chosen his firm to represent it.  A firm

19  that has experience in these types of securities

20  litigation.

21          Given these facts and the lack of any

22  apparent conflict with other Class members the Van

23  Have Group satisfies a prima facie element of

24  adequacy.

25          And I -- I'd even note the certification of

1  Pascal Van Hove (phonetic) talks about this in

2  detail.  "I have several decades," Paragraph Seven,

3  "of investment experience.  I've made the considered

4  decision to serve as lead Plaintiff in this case and

5  -- and I'm committed to making sure this case is

6  prosecuted to its fullest."

7          I have -- he talks about his decision to

8  entrust and to -- to -- to work with the -- the Rosen

9  Firm.  And under that standard, set forth by Cendant,

10  I am satisfied that -- that the Van Hove Group meets

11  the adequacy requirement.

12          I stated above, based on the experience of

13  the Rose Firm, it appears to be well equipped to

14  litigate this Class Action.  Furthermore, the

15  Spliethoff entities have offered no evidence that the

16  Rose Firm -- with the Van Hove Group is egregiously

17  unfair.  That the Van Hove Group is too large with

18  five members, a number consistent with S.E.C.

19  guidelines and sanctioned by the Third Circuit in

20  Cendant.

21          Finally, although the Van Hove Group is a

22  group of unrelated investors the Third -- this Court

23  is none -- nonetheless satisfied based on the

24  affidavits and the pleadings that is made up of

25  learned professionals including; a tax professional, a

1  C.P.A., a professor of Engineering, a retired civil

2  servant, head of a -- of a company.

3         Therefore, given their financial stake and --

4  and their backgrounds members of the Van Hove Group

5  would unlikely fail to monitor counsel effectively.

6  And in deed the members of the Van Hove Group declared

7  that they will take an active role in monitoring the

8  litigation.

9         So, the first step is met.  The Court is

10 satisfied that the Van Hove Group has made a prima

11 facie showing that it satisfied the requirements of

12 Rule 23.  And thus -- we name the present of lead

13 Plaintiff.

14        I am further satisfied that this -- this

15 Spliethoff entities have failed to rebut this

16 presumption through any competent evidence

17 demonstrating that -- that the -- the Van Hove Group

18 has failed to meet its burden.

19        The Spliethoff Entities argued that they

20 should be named lead Plaintiff because they

21 represent -- the have the greatest of one

22 individual, Hans Spliethoff, as opposed to the

23 collective five individuals who comprise the Van

24 Hove Group.  They also allege that because they are

25 not related that -- that is grounds to fund their

1   cobble together and to not be allowed to proceed as a

2   group.

3          Yet, although I appreciate that argument, as

4   noted <u>Cendant</u> has indicated that groups of multiple

5   members are acceptable as long as they meet Rule 23

6   requirements.

7          As this Court has already determined and as

8   I've -- I've cited from <u>Cendant</u> the Van Have Group --

9   Van Hove Group has sustained a larger financial loss

10  then the Spliethoff Group.  It was incumbent upon the

11  Spliethoff entities to rebut their presumption by

12  presenting evidence disproving that the claims are

13  typical or that they're not competent.  And I'm

14  satisfied that such evidence has not been put before

15  the Court.

16         And -- and for that reason I am -- I'm going

17  to grant Van Hove Group's motion to be appointed lead

18  Plaintiff.  And to the extent that the Spliethoff

19  entities have filed a motion as well, their -- their

20  competing motion is denied.

21         And that's the basis for my ruling.  I guess

22  the next issue, given that would be to see if there's

23  any further scheduling that needs to be put in effect

24  for filing of an amended complaint and then ultimately

25  motions to dismiss.

1           MR. ROSEN:  Yes, Your Honor the Plaintiffs

2  would -- intend to file an amended complaint and we

3  would like 45 days if that's okay.

4           THE COURT:  Why don't we say by September 1.

5  Or what's -- September 1 is a Saturday, why don't we

6  say by September 7th.  Okay, after Labor --

7           MR. ROSEN:  September 7th?

8           THE COURT:  Yeah that gives you after Labor

9  Day, okay.

10          MR. ROSEN:  Yes, thank you Your Honor.

11          THE COURT:  And Defendants are you still with

12 me?

13          MR. ZELICHOV:  We are Your Honor thank you

14 very much.

15          THE COURT:  Okay.  Okay.  And could you

16 oppose -- I assume you want to file a motion to

17 dismiss, right?

18          MR. ZELICHOV:  We intend to do so, correct.

19          THE COURT:  So, they're going to file an

20 amended complaint by September 7th.  Could you -- you

21 want to say by October 8th you can file your motion to

22 dismiss?

23          MR. ZELICHOV:  I believe Your Honor has

24 already entered Orders giving us 45 days after they

25 file their amended complaint.

1           THE COURT:  Okay.  So then that would be --

2    I'm sorry.  Then that would be -- I want to say

3    October 22nd.

4           MR. ZELICHOV:  That would be fine, Your

5    Honor.

6           THE COURT:  And then the reply brief would be

7    November 5th.  Okay.   I'll put that briefing in a

8    separate Order.  Counsel?

9           MR. ROSEN:  Oh, Your -- Your Honor when --

10   when would our opposition due -- be due?

11          THE COURT:  Is November 5th okay with you?

12   Do you --

13          MR. ROSEN:  November -- so -- so they filed

14   it their --

15          THE COURT:  I'm sorry, I'm -- I'm -- that's

16   my mistake.  September 7th would be amended

17   complaint.  The motion to dismiss would be October

18   22nd, Okay.

19          MR. ROSEN:  Could we have 45 days?

20          THE COURT:  Yes.  So -- I'm sorry, I

21   misspoke.  So that would be one, two, three, four,

22   five -- December 3rd --

23          MR. ROSEN:  Yes, Your Honor.

24          THE COURT:  -- would be your opposition.  And

25   why don't we say December 31st the reply.

1          MR. ZELICHOV:  That's fine Your Honor.

2          THE COURT:  Okay.  So, get everything in by

3   the end of the year.   Thank you.

4          MR. ZELICHOV:  Thank you Your Honor.

5          THE COURT:  Okay.  Thank you both.

6          MR. ROSEN:  Thank Your Honor.

7          MR. ROSENFELD:  Thank Your Honor.

8          (Conclusion of Proceeding at 4:08:19 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I, JESSICA ROBINSON, Transcriptionist, do hereby

2  certify that the 38 pages contained herein constitute

3  a full, true, and accurate transcript from the

4  official electronic recording of the proceedings had

5  in the above-entitled matter; that research was

6  performed on the spelling of proper names and

7  utilizing the information provided, but that in

8  many cases the spellings were educated guesses; that

9  the transcript was prepared by me or under my

10  direction and was done to the best of my skill and

11  ability.

12    I further certify that I am in no way related to

13  any of the parties hereto nor am I in any way

14  interested in the outcome hereof.

15

16

17  S/ *Jessica Robinson*                    7/19/12

18  Signature of Approved Transcriber        Date

19

20  Jessica Robinson, AOC #581

21

22  King Transcription Services

23  901 Route 23 South,

24  Center Suite 3

25  Pompton Plains, N.J.  07444

26  (973) 237-6080

27

28

29

30

31

32

33

34