```
 1                     UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
 2

 3    SNELLINK,                        .
                                       .
 4          Plaintiff,                 .
                                       .  Case No. 11-cv-02164
 5    vs.                              .
                                       .  Newark, New Jersey
 6    UNIVERSAL TRAVEL GROUP, INC.,    .  March 24, 2014
      et al.,                          .
 7                                     .
            Defendant.                 .
 8

 9                      TRANSCRIPT OF TELECONFERENCE
10              BEFORE THE HONORABLE MADELINE COX ARLEO
                    UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiffs:    LAURENCE M. ROSEN, ESQ.
                             The Rosen Law Firm, PA
14                           236 Tillou Road
                             South Orange, NJ 07079
15                           (973) 313-1887
                             Email: Lrosen@rosenlegal.com
16

17
      For the Defendants     RICHARD H. ZELICHOV, ESQ.
18    Universal Travel       Katten Muchin Rosenman LLP
      Group, Jiangping       2029 Century Park East
19    Jiang and Jing Xie:    Suite 2600
                             Los Angeles, CA 90067-3012
20                           (310) 788-4680
                             Email: Richard.zelichov@kattenlaw.com
21
                             CHRISTINA L. COSTLEY, ESQ.
22                           Katten Muchin Rosenman LLP
                             2029 Century Park East
23                           Suite 2600
                             Los Angeles, CA 90067-3012
24                           Email:
                             Christina.costley@kattenlaw.com
25
```

```
1   Audio Operator:

2   Transcription Service:        KING TRANSCRIPTION SERVICES
                                  901 Route 23 South, Center Ste. 3
3                                 Pompton Plains, NJ 07444
                                  (973) 237-6080
4
    Proceedings recorded by electronic sound recording (not all
5   parties were discernible on the record); transcript produced
    by transcription service.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Commencement of proceedings at 1:04 P.M.)

2

3              THE COURT:  This is Judge Arleo.  You're on the

4    record in my courtroom in Snellink versus Universal Travel

5    Group.

6              Could I have appearances, please?

7              MR. ROSEN:  This is Laurence Rosen for the

8    plaintiff.

9              MR. ZELICHOV:  Good afternoon, Your Honor, Richard

10   Zelichov, along with my colleague Christina Costley on behalf

11   of UTG, Jiangping Jiang, and Jing Xie.

12             THE COURT:  Okay.  Is that everyone?

13             MR. ROSEN:  Yes, Your Honor.

14             THE COURT:  Okay.  A couple of issues that we have

15   to address today.  And let's talk first with the motion of

16   alternative service, and that is a motion that has been filed

17   by the plaintiff.  And as I understand it, there is a request

18   to utilize alternative service as set forth in Rule 4(f)(3).

19   And that rule provides that -- addresses service on an

20   individual in a foreign country.  And it provides that, one,

21   service should be made by any internationally agreed means of

22   service that is reasonably calculated to give notice, such as

23   those authorized by the Hague Convention or the service

24   abroad of judicial and extrajudicial documents, subsection 3

25   says, by other means not prohibited by international

1   agreement as the court orders.

2           I think there's a consensus here that as to -- as

3   to what the Hague Convention provides.  There's agreement

4   that China is a signatory to the Hague Convention.  And China

5   has specified through that Convention what service is

6   permitted.  And the case law interpreting service on Chinese

7   nationals has discussed the Hague Convention as it relates to

8   China.  And I think the parties agree that China objects to

9   service by postal channels and by private couriers.

10          So what happened here was the plaintiff utilized

11  the Hague Convention and consistent with the Hague Convention

12  used -- attempted to serve the defendant, Mr. Wang, through

13  the Chinese officials.  And set forth and attached to a

14  certification of counsel filed as Document Number 89-1 and

15  the attestation, that says, quote, the addressee refused to

16  accept the documents.

17          And that has prompted the plaintiffs to file this

18  motion for alternative service and plaintiff's request that

19  they be allowed to effect service of process by two means.

20  And the first one, I'm not -- I want to hear from plaintiff's

21  counsel about it -- by leaving a -- leaving the summons with

22  Mr. Wang on the floor in front of his apartment.  That's the

23  sense that I -- that's what's set forth in the papers.

24          And let's start with that one, because here's my

25  concern.  My concern is that if we're going to utilize

1   service pursuant to subsection 3 of 4(f), it has to be by

2   means not prohibited by international agreement.  We know

3   that postal channels and couriers are banned.  They're not

4   authorized.

5            So wouldn't this alternate service by leaving a

6   summons on the floor by, I guess, by a courier, fly in the

7   face of China's objection to service by courier?

8            MR. ROSEN:  Yes, if we used a courier, then it

9   would -- it would, Your Honor.

10           In the letter from -- we used the Hague, and we

11  went through the Chinese Ministry of Justice to serve him.

12  And so the -- the person from the Ministry of Justice went to

13  his -- I don't recall -- his office, but he presented him

14  with the --

15      (Simultaneous conversation)

16           THE COURT:  Was it at his -- was it at his office

17  or his home?

18           MR. ROSEN:  I can't remember off the top of my

19  head.  I can look and see what it says.

20           But the important thing is that he was presented

21  with the documents, and he said, he -- you know, said I don't

22  want to take them.  You know.

23           THE COURT:  Let me stop you for a minute.  Let me

24  stop you for a minute.

25           I have an affidavit, an attestation that says the

 1   addressee refused to accept the documents.  I don't see

 2   anything that says that they had a conversation and he said

 3   I'm not going to take it.  I just have --

 4            MR. ROSEN:  No, no, I mean, I think -- I

 5   think that's what -- what was written, so the Chinese

 6   Ministry of Justice, they give us a return of service, and on

 7   it, then they write -- they write, you know, what happened

 8   and what went wrong.

 9            THE COURT:  So all we know is what -- so I just

10   want to make sure we have the facts clear.  The only fact

11   that I saw from the Chinese government was the line that says

12   the addressee refused to accept the documents.

13            Right?

14            MR. ROSEN:  I'll -- it says -- it says here, the

15   addressee refused to accept the documents.

16            THE COURT:  Right, so the -- I don't have anything

17   about the --

18            MR. ROSEN:  I mean, what might be what happened is

19   that -- is that he was presented with the documents and he

20   wouldn't take them.  At least, you know --

21       (Simultaneous conversation)

22            THE COURT:  All right.  Let me stop you.  I've got

23   to stop you for a minute.

24            What's the basis of your belief?

25            MR. ROSEN:  Well, that's what it says -- refused to

```
 1   accept the documents.  Also we have -- we have

 2   conversations -- I don't recall if someone specifically

 3   called the Ministry of Justice and discussed it with them or

 4   not.  That, I don't -- that, I'm not sure about.  But my

 5   understanding is --

 6       (Simultaneous conversation)

 7           THE COURT:  Well, if he did -- let me stop you for

 8   minute.  If he did, it's not before me, because I have --

 9           MR. ROSEN:  Yeah.

10           THE COURT:  -- nothing, any certifications or sworn

11   statements of anyone in the Chinese Ministry of Justice.  I

12   have one line that could be interpreted in different ways

13   that the addressee refused to accept the documents.  That's

14   it.

15           So --

16           MR. ROSEN:  Right.

17           THE COURT:  -- let's -- let's talk -- let me --

18   let's focus back on my question.  How do you -- what is your

19   proposal.  Is it -- you're going to have a courier leave it

20   in front of his door?  Tell me what you want me to authorize.

21           MR. ROSEN:  One thing you could do, Your Honor, is

22   we could give it back to the Ministry of Justice, have them

23   do the same thing, present the individual with the documents,

24   and if he refuses, just leave them there.  Right?  Just leave

25   them at his -- at the doorstep; right?  Or wherever he
```

1    happens to be when he's served, so that he doesn't have to

2    take it -- take it in his hands.  I mean that's one

3    possibility.

4            But I think we're dealing with a person who's not

5    cooperative to some -- you know -- the person knows what's

6    happening --

7        (Simultaneous conversation)

8            THE COURT:  Let me stop --

9        (Simultaneous conversation)

10           THE COURT:  Let me stop you for a minute.

11           MR. ROSEN:  Yes.

12           THE COURT:  So if you come back to me and you have

13   an affidavit from someone from the Chinese Department of

14   Justice that said more detail, like you said, I opened the

15   door, it was him, I -- it was a male meeting his description,

16   he refused to accept it, so I left it at his door, that would

17   be -- that -- that, you know, arguably that may not offend

18   the Hague Convention because it was service effectuated by a

19   person affiliated with the Chinese ministry.

20           I'm not going to authorize that in advance, but I

21   will -- because I don't know what they're going to do.  I

22   don't know how you're going to communicate it to me that --

23   that -- through an affidavit or otherwise, that a person at

24   the Chinese Ministry of Justice would agree to do.  They

25   would say, we'll leave it at the door, and they will tell me

1   that he met his description, he was there, and then he --

2   then he refused to accept it.

3            Because that's the way it would be -- because what

4   I have to be concerned about under alternate service is

5   that -- is it likely to give him fair notice of the

6   complaint.  And that would give me fair notice if it was --

7   if the Chinese -- and not offend the Hague Convention.  But

8   there has to be something that convinces me that he lived

9   there and that you left it with him, and therefore if he just

10  closes door and you leave it on his doorstep and he's inside,

11  it's reasonably calculated to give him notice of this

12  complaint.  If he doesn't live there anymore and the person

13  who opened the door is not him, because he left, the fact

14  that he is -- just like in this country, when you think about

15  service within the jurisdiction, you have to have some

16  good-faith basis to believe that the place you're serving a

17  defendant is where he resides.  Right?

18           MR. ROSEN:  Yes, Your Honor.

19           THE COURT:  So I would need to know that, and if

20  you could reasonably assure me that he lives there, that they

21  tried to serve him and he closed the door on him and they

22  left it at -- and the Chinese official left it at his door,

23  that may comport with section (f).

24           But I'm not there yet.  So you need re- -- what --

25  here's -- here's what I'm inclined to do.  I'm not inclined

1   to let you -- because I'm not sure what you want to do.  I'm

2   not inclined to just say go leave a copy at his door.  There

3   would have to be a totality of circumstances that would give

4   me confidence that that method doesn't offend the Hague

5   Convention and is reasonably calculated to give notice of the

6   complaint.

7         So for instance, having a courier leave it at the

8   door, which is what you've -- what you really -- that's why I

9   started out by asking what are you proposing.  Courier would

10  offend the Hague Convention.  The mail -- a mailing would

11  offend the Hague Convention.

12        So you -- you know, I'm going to deny your request

13  as -- as articulated in your papers, but not foreclosing the

14  possibility that you can make a second application for me to

15  deem that good service, depending on the circumstances.

16        MR. ROSEN:  Yes, Your Honor.  I understand.

17        THE COURT:  Let me ask -- let me ask defendants,

18  what would your -- if -- just -- would you have any objection

19  if the Ministry of Justice served him in the -- in the manner

20  that I just articulated?

21        MR. ZELICHOV:  Your Honor, I think it would depend

22  on whether -- we'd have to look back at the provisions of the

23  Hague Convention again and China's various objections to them

24  to determine, you know, would what -- if what plaintiff

25  does -- does offend those provisions.

1            And that is not something I can answer as a

2    hypothetical at this point in time.

3            You know, I -- it's hard to speak for Mr. Wang,

4    given that I don't represent him, I have never spoken with

5    him, and I can't say as to whether he would object.  But --

6    but, you know, it's certainly a step in the right direction.

7            THE COURT:  Right.  And I guess my concern is about

8    authorizing it in advance.  Usually folks will ask for

9    alternative service in advance.

10           But what makes this unusual, what we just talked

11   about -- and I'll let plaintiff talk a little bit further --

12   I'm not -- I don't think it's appropriate for me to authorize

13   an alternative means of service that requires the Chinese

14   government to do something which they may not be willing to

15   do, because there is nothing in the Hague Convention that

16   speaks to this, that a -- it talks to, from what I can

17   understand, that you can leave it -- that -- that service has

18   to be through someone from the Ministry of Justice, and if

19   they -- in an ideal situation, they open the door, they

20   accept it, service is completed.

21           But I'm not aware of anything that -- which the

22   Chinese government would -- someone from the Ministry of

23   Justice would be empowered to leave it at his door and give

24   an attestation to that effect.

25           So --

1        (Simultaneous conversation)

2              MR. ROSEN:  Your Honor.

3              THE COURT:  Go ahead.

4              MR. ROSEN:  I think the problem in China is, first

5     of all, it's an extremely large country, you know, maybe four

6     or five times larger than ours.  And each province does

7     things a little bit differently.  And the service was

8     effected from the provincial ministry court system.  And so

9     we've -- we've had situation -- we've had a lot of these

10    Chinese cases, and we've had situations in which the -- the

11    Ministry of Justice would consider it good service by just

12    leaving it on his -- you know, going in his office and

13    leaving it on his desk, whether or not he -- he formally

14    accepts it or not -- this particular process server from the

15    ministry, you know, wrote down what he wrote and didn't just

16    leave it with him.

17             But what really -- you know -- is good enough, just

18    that he would be here, if he went to a corporation -- you

19    know, left it with the -- with the, you know, person at the

20    front desk.

21             So I -- you know, what I'd like to do is just give

22    us a chance to serve it again and -- we'll call the ministry

23    ahead of time and ask them to just leave it with -- with him

24    without, you know, a formal acceptance or rejection, as an

25    option, and see if that satisfies due process.

1          THE COURT:  Okay.  My only -- my only question is

2     is that something that we should -- if that's your plan to

3     have the person from the Chinese ministry leave it -- serve

4     it and if he doesn't answer, leave it at his door, maybe

5     that's something that's a narrow request should be briefed --

6     you should get authority to do that in advance rather than

7     coming in after the fact.

8          Do you know what I'm trying to say?  Because I

9     think that --

10         (Simultaneous conversation)

11         MR. ROSEN:  Yes --

12         (Simultaneous conversation)

13         THE COURT:  -- that -- is -- the way the rule is

14    written is that you're requesting an alternate service.

15    Right?  So that is slight- -- that maybe an alternative to

16    what is provided by the Hague Convention.  You can take the

17    risk of serving them and have them object to service.  But

18    you could also make a -- make a more narrow motion focused on

19    this very issue, and that -- that way defendant could --

20    could -- if maybe they wouldn't object to it, maybe they

21    would, but then they would at least articulate their

22    objections in advance of you going through the -- through the

23    mechanics of service, again, through the Chinese ministry.

24         MR. ROSEN:  Well -- well -- service, but to effect

25    service in China, you -- other than email, which I've seen

1   courts approve, but we don't have his email address, it'd

2   have to be through the Ministry of Justice, generally.

3          THE COURT:  I can't -- I can't -- I'm not going to

4   opine on all the ways that someone could potentially serve

5   someone in China, but I will say this, I think the case that

6   was noted by the defendants, Intercontinental Industries v.

7   Luo, which is found at F. Supp. 2d -- 2011 WL 221880 (C.D.

8   Cal. 2011), the court says in light of China's objection of

9   service by postal channels, the permanent bureau's position

10  that private couriers should be treated as postal car- --

11  channels under the Hague Convention and other courts'

12  treatment of private couriers as postal channels, the court

13  cannot authorize service to or through a commercial carrier

14  pursuant to 4(f)(3), as it is prohibited by an international

15  agreement.

16         So what I could tell you is whatever means you

17  propose has -- cannot be -- cannot be prohibited by the Hague

18  Convention, number one; and number two, has to be reasonably

19  calculated to give him notice of the lawsuit.  Those are the

20  two things that Rule 4(f)(3) requires me to -- to make sure

21  are present with respect to any alternative service.

22         So I can't -- I'm not going to give you an opinion

23  on all the different means, but what you propose, which is

24  not -- which is vague, just by leaving it at a door, could

25  potentially violate the Hague Convention.

1              So I can't --

2       (Simultaneous conversation)

3              MR. ROSEN:  Well, Your Honor, I'm not suggesting we

4    just leave it at a door.  I'm suggesting we have the Ministry

5    of Justice try -- try again to serve it.

6              THE COURT:  Okay.  Let me stop -- let me stop you

7    for a minute.  Okay.

8              That's not what your papers say.

9              MR. ROSEN:  I know that.

10             THE COURT:  There's nowhere in your papers where

11   you say that.  So your motion is a broad-based motion to

12   leave the papers at his door.  That's denied.

13             If you want to --

14             MR. ROSEN:  Right.

15             THE COURT:  -- renew your motion and make it more

16   narrowly tailored, as we just talked about on the record, I'd

17   be happy to reconsider that, and then I'll give defendants an

18   opportunity to oppose it, just like we did this motion.

19             But as framed, your motion is denied.  And your

20   second -- your alternative motion, let's talk about that for

21   a minute, serving him through the company, the problem with

22   that is that in this case, he's a former employee, and the

23   company has said they've had no contact with him.  So to

24   serve him by serving his company, I'm not satisfied would

25   also serve notions of due process.

1            So that's -- unless you want to be heard on it, but

2    I think the law's pretty clear there, that if he's not a

3    present officer, and if there's no communication with him --

4    I mean the few cases that allow it, it's when there is --

5    it's a former -- there's maybe a former officer, and

6    there's -- he continues to have regular contact with counsel

7    and the company.

8            That is not the case here.

9            So --

10           MR. ROSEN:  Yes, Your Honor, I understand.

11           THE COURT:  You got it?  So what I -- what I'd

12   suggest you do is I'm going to deny this without prejudice.

13   You can renew it as quickly as you want to.  And -- and then

14   I'll give defendants an alt- -- an opportunity to respond,

15   and then we'll take it from there.  Okay?

16           MR. ROSEN:  Yes, Your Honor.

17           THE COURT:  Okay.

18           Now, one other housekeeping matter, guys, and that

19   has to do with the motion to dismiss.  Tell me about what's

20   going on with the SEC enforcement action.

21           MR. ZELICHOV:  Your Honor, this is Richard Zelichov

22   on behalf of UTG and Jiangping Jiang.

23           The SEC enforcement action was brought at --

24   settled action and is done at this point in time.  I think,

25   as you see, the parties settled -- the defendants settled

1   without admitting or denying any of the allegations in the

2   complaint.  And there's nothing further occurring on that.

3            THE COURT:  Is there anything as a result of

4   that -- as a result of that enforcement action, which would

5   warrant some amendments to the present complaint?

6            MR. ROSEN:  -- judicial notice, but I think that

7   there are allegations in the complaint that if -- if request

8   for judicial notice was not granted, we would add to our

9   complaint.  There's a number of things such as the -- what's

10  the word -- but shall we say the diversion of about --

11  million dollars of offering proceeds to oversee bank accounts

12  that was alleged in the complaint.  There was -- regarding

13  the use of proceeds.  There was misrepresentations as to the

14  ownership of the subsidiaries and as to the improper

15  consolidation of revenue from subsidiaries.

16           So there's number of allegations that we will use

17  in an amended complaint related to the SEC complaint.

18           THE COURT:  Okay.

19           MR. ZELICHOV:  Your Honor --

20           THE COURT:  Yes.

21           MR. ZELICHOV:  -- this is Mr. Zelichov on behalf of

22  the defendants.

23           I mean, I think what we have is I mean, I think

24  plaintiff has essentially acknowledged thus far that the

25  amended complaint that was -- is sort of at issue on the

1   motion to dismiss, doesn't state a claim, because they've

2   supplemented that pleading four times, you know, since

3   defendants filed their motion to dismiss, including with the

4   sort of request for judicial notice of the SEC complaint,

5   which I must -- I must put on the record is -- those are just

6   assertions by the SEC.  They were not proven.  They were

7   not -- no one admitted to them.  It's in the form of a

8   settlement.

9          But I think the -- the -- what has resulted from

10  this is that we're kind of playing with a puzzle at this

11  point in time where we don't actually know what we're really

12  shooting at.

13         I think the right result of that, our motion to

14  dismiss, the one that's presently outstanding, should be

15  granted, and then plaintiffs should file a -- a motion to

16  amend under Rule 15 so that they can explain what a further

17  amended complaint might include.  And then we can choose

18  whether to, you know, allow -- consent to them filing an

19  amended complaint or choose to oppose their motion to amend.

20  And then, you know, we can -- if the Court were to grant the

21  motion to amend, that we could then determine whether we

22  wanted to move to dismiss that amended complaint.

23         THE COURT:  Let me save you the trouble, because

24  I've discussed this case with Judge McNulty, and he is

25  inclined to terminate the motion to dismiss, direct

1    plaintiffs within 10 days to file an amended complaint that

2    does two things:  One, it addresses all these new

3    developments with respect -- and the factual basis -- new

4    facts that have come to light since the SEC enforcement

5    action; and, two, cleans up the complaint, legally and just

6    in terms of breadth.  And makes it -- and addresses some of

7    the deficiencies, if there are any, that defendants have --

8    have pointed out.  But to streamline the complaint, make it

9    more responsive, more carefully pled, and to address all the

10   SEC developments.  And when that new complaint is filed,

11   then -- then defendants can refile their motion to dismiss on

12   a regular schedule.

13              That's what Judge McNulty has asked me to convey to

14   you, and that's why I'm conveying it.

15              So is it possible for plaintiffs to get another

16   complaint filed by -- within two weeks?  Or do you need more

17   time?

18              MR. ROSEN:  How much time, Your Honor?  I couldn't

19   hear.

20              THE COURT:  I was going to say 14 days?  Two weeks?

21   10 business days?

22              MR. ROSEN:  Can I have 30 days, because I would

23   like to get some information out of China that might take

24   more than two weeks.

25              THE COURT:  For the amended complaint?

1                MR. ZELICHOV:  Your Honor?

2                THE COURT:  For the amended --

3                MR. ROSEN:  Yeah, I would like to try to pull some

4    regulatory filings, and it sometimes takes more than two

5    weeks.  It just depends, because, you know, China's a --

6    it's -- can be complicated to get things done sometimes.

7                THE COURT:  Okay.

8                MR. ZELICHOV:  Your Honor, we wouldn't object to

9    plaintiffs having 30 days.

10               THE COURT:  Okay.  So why don't we say, then, by

11   the end of the month.  Why don't we say by May 1?  Okay?

12               MR. ROSEN:  Yes, Your Honor.

13               THE COURT:  And then I'll do --

14        (Simultaneous conversation)

15               MR. ROSEN:  -- we may add and subtract some

16   defendants, based on some -- particularly, the PC- -- the

17   PCAOB order -- I don't know if you're familiar with that.  It

18   was a -- the Public Company Accounting Oversight Board issued

19   the order of sanctions against auditor.  And we were planning

20   to make a motion to amend to add the auditors, so perhaps we

21   can just add the auditor now.

22               THE COURT:  Okay.  And would it be fair to give

23   defendants 30 days to file a motion -- 30 days after the

24   mo- -- the amended complaint is filed?

25               MR. ROSEN:  Yes, Your Honor, we have no objection

```
 1    to that.

 2              THE COURT:  Okay.  If you need additional time,

 3    guys, just send me a letter.  I'm happy to give you an order

 4    giving you some time if you -- if you will find yourself

 5    falling behind on the schedule.

 6              So that'll be the schedule for filing the amended

 7    complaint and the motion to dismiss.

 8              In the meantime, I'll send -- I'll sign an order

 9    denying the motion for alternate service without prejudice.

10    That can be renewed at any time consistent with the

11    conversation we had today on the record.

12              Okay?

13              MR. ROSEN:  Yes, Your Honor.

14              THE COURT:  All right, guys, good luck, have a

15    nice --

16        (Simultaneous conversation)

17              MR. ZELICHOV:  Thank you very much, Your Honor.

18              THE COURT:  -- week.  Take care.  Bye-bye.

19              MR. ROSEN:  Thank you, Judge.

20               (Conclusion of proceedings at 1:29 P.M.)

21

22

23

24

25
```

1                        Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3   that the 22 pages contained herein constitute a full, true,

4   and accurate transcript from the official electronic

5   recording of the proceedings had in the above-entitled

6   matter; that research was performed on the spelling of proper

7   names and utilizing the information provided, but that in

8   many cases the spellings were educated guesses; that the

9   transcript was prepared by me or under my direction and was

10  done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12  the parties hereto nor am I in any way interested in the

13  outcome hereof.

14

15

16

17

18  S/ *Sara L. Kern*                    April 2, 2014

19  _____      _____
    Signature of Approved Transcriber              Date

20

21

    Sara L. Kern, CET**D-338
22  King Transcription Services
    901 Route 23 South, Center Suite 3
23  Pompton Plains, NJ 07444
    (973) 237-6080
24

25