# EXHIBIT 2



1666 K Street, N.W.<br>
Washington, DC 20006<br>
Telephone: (202) 207-8430<br>
Facsimile: (202) 862-0757<br>
www.pcaobus.org

| | |
|---|---|
| ORDER INSTITUTING DISCIPLINARY PROCEEDINGS, MAKING FINDINGS, AND IMPOSING SANCTIONS<br><br>*In the Matter of Acquavella, Chiarelli, Shuster, Berkower & Co., LLP*<br><br>Respondent. | PCAOB Release No. 105-2013-010<br><br>November 21, 2013 |

By this Order, the Public Company Accounting Oversight Board (the "Board" or "PCAOB") is censuring Acquavella, Chiarelli, Shuster, Berkower & Co., LLP ("ACSB," the "Firm" or "Respondent"), revoking ACSB's registration, and imposing a civil penalty in the amount of $10,000 upon ACSB.[1/]  The Board is imposing these sanctions on the basis of its findings that ACSB (a) violated PCAOB rules, quality control standards and auditing standards in connection with the audits of three issuer clients; and (b) violated Section 10A(g) of the Securities Exchange Act of 1934 ("Exchange Act") and PCAOB rules and standards in connection with the audits of two issuer clients.

**I.**

The Board deems it necessary and appropriate, for the protection of investors and to further the public interest in the preparation of informative, accurate and independent audit reports, that disciplinary proceedings be, and hereby are, instituted pursuant to Section 105(c) of the Sarbanes-Oxley Act of 2002, as amended ("Act"), and PCAOB Rule 5200(a)(1) against Respondent.

**II.**

In anticipation of the institution of these proceedings, and pursuant to PCAOB Rule 5205, Respondent has submitted an Offer of Settlement ("Offer") that the Board has determined to accept.  Solely for purposes of these proceedings and any other proceedings brought by or on behalf of the Board, or to which the Board is a party, and without admitting or denying the findings herein, except as to the Board's jurisdiction

---

[1/]   ACSB may reapply for registration after two (2) years from the date of this Order.



PCAOB Release No. 105-2013-010
November 21, 2013
Page 2

## ORDER

over Respondent and the subject matter of these proceedings, which is admitted, Respondent consents to entry of this Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions ("Order") as set forth below.[2/]

### III.

On the basis of Respondent's Offer and information obtained by the Board in this matter, the Board finds[3/] that:

**A.    Respondent**

1.    Acquavella, Chiarelli, Shuster, Berkower & Co., LLP was, at all relevant times, a public accounting firm with offices in Iselin, New Jersey, and New York, New York.  The Firm was licensed by the New Jersey Office of Attorney General (License No. 20CB00456100) and by the State of New York (License No. 061381).  The Firm became registered with the Board pursuant to Section 102 of the Act and PCAOB rules on June 2, 2009.  At all relevant times, ACSB was the external auditor for each of the issuers identified below.

**B.    Other Relevant Individual**

2.    David T. Svoboda ("Svoboda"), age 53, of Bohemia, New York, is a certified public accountant licensed in the State of New York (License No. 083271).  At all relevant times, Svoboda was a non-equity partner and an associated person of ACSB.  Svoboda authorized the issuance of ACSB's audit reports for each of the audits identified below.[4/]  At all relevant times, Svoboda was one of only two ACSB partners

---

[2/]    The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in this or any other proceeding.

[3/]    The sanctions that the Board is imposing on Respondent in this Order may be imposed only if a respondent's conduct meets one of the conditions set out in Section 105(c)(5) of the Act, 15 U.S.C. § 7215(c)(5).  The Board finds that Respondent's conduct described in this Order meets the condition set out in Section 105(c)(5), which provides that such sanctions may be imposed in the event of: (A) intentional or knowing conduct, including reckless conduct, that results in a violation of the applicable statutory, regulatory, or professional standard; or (B) repeated instances of negligent conduct, each resulting in a violation of the applicable statutory, regulatory, or professional standard.

[4/]    See David T. Svoboda, CPA, PCAOB Release No. 105-2013-011 (Nov. 21, 2013).



PCAOB Release No. 105-2013-010
November 21, 2013
Page 3

### ORDER

performing audits of public companies and was the leader of the Firm's public company audit practice. Svoboda's employment with the Firm ended on or about September 30, 2011.

**C.    Summary**

3.    This matter concerns ACSB's failure to comply with PCAOB rules, quality control standards and auditing standards in connection with the audits of three issuers. In addition, ACSB violated Section 10A(g) of the Exchange Act and PCAOB rules and standards that require a registered public accounting firm be independent of the firm's audit client throughout the audit and professional engagement period.

4.    At all times relevant to this Order, ACSB failed to develop quality control policies and procedures sufficient to provide it with reasonable assurance that the work performed by engagement personnel met applicable professional standards. ACSB also failed to develop quality control policies and procedures sufficient to ensure that the audit personnel possessed the degree of technical training and proficiency required to fulfill their engagement responsibilities.

5.    ACSB's violations of quality control standards contributed to numerous violations of PCAOB auditing standards in connection with the audits of three issuers' financial statements (collectively, the "Audits").[5] As detailed below, ACSB failed to: (1) adequately supervise engagement personnel; (2) adequately plan and perform audit procedures related to the Audits; and (3) exercise due care and professional skepticism.

**D.    Respondent Violated PCAOB Rules and Quality Control Standards**

6.    PCAOB rules require that a registered public accounting firm comply with the Board's quality control standards.[6] PCAOB quality control standards require that a registered public accounting firm "shall have a system of quality control for its accounting and auditing practice."[7]

---

[5]    Specifically, the Audits consist of the Firm's audits of the 2009 financial statements of: (a) Universal Travel Group ("Universal Travel"); (b) Home System Group ("Home System"); and (c) Sinocom Pharmaceutical, Inc. ("Sinocom").

[6]    PCAOB Rules 3100, *Compliance with Auditing and Related Professional Practice Standards,* and 3400T, *Interim Quality Control Standards*.

[7]    QC § 20.02, *System of Quality Control for a CPA Firm's Accounting and Auditing Practice*.



# ORDER

7.    Policies and procedures should be established to provide the firm with reasonable assurance that work "is assigned to personnel having the degree of technical training and proficiency required in the circumstances."[8]  PCAOB quality control standards also state that policies and procedures "should be established to provide the firm with reasonable assurance that the work performed by engagement personnel meets applicable professional standards, regulatory requirements, and the firm's standards of quality."[9]  PCAOB quality control standards also provide that policies and procedures "should be established to provide the firm with reasonable assurance that the policies and procedures established by the firm for each of the other elements of quality control . . . are suitably designed and are being effectively applied."[10]  As detailed below, ACSB failed to comply with PCAOB rules and quality control standards in connection with the Audits.

## Personnel Management

8.    Throughout the relevant time period, ACSB failed to put policies and procedures in place to provide the Firm with reasonable assurance that work was assigned to personnel having the degree of technical training and proficiency required in the circumstances.[11]  Universal Travel and Home System had primary operations in the People's Republic of China ("PRC").  Sinocom had its primary operations in Hong Kong Special Administrative Region of the PRC ("Hong Kong").  ACSB entered into an agreement to work with a PRC-based accounting firm (the "China Firm") whereby the China Firm would perform a significant portion of the audit procedures for the Audits.

9.    ACSB assigned Svoboda to serve as the auditor with final responsibility for the Audits.  Svoboda, who does not speak, understand or read Chinese, relied on lower level accounting assistants ("assistants") with Chinese language skills, including those from ACSB and the China Firm, to identify audit issues, communicate with management and third-parties, and translate and analyze documents provided by the

---

[8]    QC § 20.13; see also AU § 230.06, *Due Professional Care in the Performance of Work*.  All references to PCAOB auditing standards are to the versions of those standards in effect at the time of the Audits.

[9]    QC § 20.17.

[10]    QC § 20.20; see also QC § 30.03, *Monitoring a CPA Firm's Accounting and Auditing Practice*.

[11]    QC § 20.13.



### ORDER

issuers.  ACSB failed to control which individuals from the China Firm were assigned to the Audits.  ACSB failed to adequately assess the China Firm assistants' competency in accounting principles generally accepted in the United States ("U.S. GAAP") and knowledge of PCAOB rules and standards.  ACSB also failed to provide any training to the China Firm assistants in PCAOB standards prior to the Audits.

#### Engagement Performance

10.  Throughout the relevant time period, ACSB failed to put policies and procedures in place to ensure that engagement personnel performed audit procedures necessary to comply with PCAOB standards.[12]  As a result, in certain instances described below, ACSB staff members failed to complete necessary audit work before the Firm released its audit reports for the Audits.  For each of the Audits, ACSB staff members with limited public audit experience and China Firm personnel conducted virtually all of the Firm's audit procedures.  Much of that work was never reviewed by Svoboda or any senior person at ACSB.[13]

#### Monitoring

11.  In its quality control policies, ACSB stated that: "Annually, the Quality Control Partner/Manager selects an individual or a team to review the Firm's quality control system."  However, ACSB failed to do so and, thus, did not perform such an internal inspection with regard to its issuer clients in calendar years 2009 and 2010.  Accordingly, ACSB's monitoring procedures did not enable the Firm to obtain reasonable assurance that its system of quality control was effective.[14]

**E.   Respondent Violated PCAOB Rules and Auditing Standards in Connection with the Audits**

12.  In connection with the preparation or issuance of an audit report, PCAOB rules require that a registered public accounting firm and its associated persons comply with the Board's auditing and related professional practice standards.[15]  An auditor may express an unqualified opinion on an issuer's financial statements only when the auditor

---

[12]   See QC §§ 20.03, .17.

[13]   See QC §§ 20.11, .13.

[14]   QC § 30.03.

[15]   See PCAOB Rules 3100 and 3200T, *Interim Auditing Standards*.



PCAOB Release No. 105-2013-010
November 21, 2013
Page 6

## ORDER

has formed such an opinion on the basis of an audit performed in accordance with PCAOB standards.[16] Among other things, PCAOB standards require that an auditor exercise due professional care, exercise professional skepticism, and obtain sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements.[17]

13. PCAOB auditing standards also require that an audit is adequately planned and that assistants are properly supervised.[18] "Supervision involves directing the efforts of assistants who are involved in accomplishing the objectives of the audit and determining whether those objectives were accomplished."[19]

14. As detailed below, ACSB failed to comply with these auditing standards in connection with the Audits.

### Audit of 2009 Financial Statements of Universal Travel Group

15. Universal Travel Group was, at all relevant times, a Nevada corporation with its principal office in Shenzhen, PRC. Universal Travel's public filings disclosed that it was a travel services provider engaged in providing air ticketing, hotel booking and packaged tourism services throughout the PRC via the internet, customer representatives and kiosks. During the relevant period, Universal Travel's common stock was registered with the Securities and Exchange Commission ("Commission") under the Exchange Act and was traded at various times on the OTC Bulletin Board, New York Stock Exchange ("NYSE") Amex, and NYSE.[20] At all relevant times,

---

[16] AU § 508.07, *Reports on Audited Financial Statements*.

[17] AU § 150.02, *Generally Accepted Auditing Standards*; AU § 230; AU § 326, *Evidential Matter*.

[18] AU § 311, *Planning and Supervision*.

[19] AU § 311.11.

[20] From January 1, 2009 through May 28, 2009 Universal Travel's common stock was registered under Section 12(g) of the Exchange Act and was traded on the OTC Bulletin Board. On April 14, 2009, the issuer filed a registration statement to register its common stock under Section 12(b) of the Exchange Act in connection with its listing on the NYSE Amex Market. On May 28, 2009, Universal Travel's common stock began trading on the NYSE Amex and also continued to trade on the OTC Bulletin Board. On October 27, 2009, Universal Travel's common stock began trading on the



PCAOB Release No. 105-2013-010
November 21, 2013
Page 7

## ORDER

Universal Travel was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

16. ACSB became the auditor for Universal Travel on June 30, 2009. The Firm audited Universal Travel's financial statements for the year ended December 31, 2009, and issued an unqualified opinion dated February 22, 2010, which was included in Universal Travel's Form 10-K filed with the Commission on March 5, 2010.[21/] The audit report stated that, in ACSB's opinion, Universal Travel's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with U.S. GAAP and that ACSB's audit was conducted in accordance with PCAOB standards.

17. The engagement team for ACSB's audit of Universal Travel's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, two assistants from the Firm, and assistants from the China Firm.

18. ACSB failed to comply with the applicable professional standards in connection with the 2009 Universal Travel audit. First, the Firm failed to adequately plan the audit by failing to consider the nature, extent, and timing of work to be performed.[22/] The 2009 planning memorandum included in the Universal Travel

---

New York Stock Exchange. On April 26, 2012, the issuer filed a Form 25, *Notification of Removal from Listing and/or Registration* under Section 12(b) of the Exchange Act, voluntarily withdrawing its common stock from listing and registration on the NYSE. On September 27, 2013, the Commission issued an order revoking the registration of Universal Travel's securities due to the issuer's failure to file periodic reports with the Commission since September 30, 2011.

[21/]   Although the Firm's audit opinion on the 2009 financial statements was unqualified, the Firm expressed an adverse opinion on Universal Travel's internal control over financial reporting, noting the identification of two material weaknesses including: "Lack of technical accounting expertise among financial staff regarding US GAAP and the requirements of the PCAOB, and regarding preparation of financial statements." The Firm's combined report stated that because of the effect of those material weaknesses "Universal Travel Group did not maintain effective internal control over financial reporting as of December 31, 2009," but that "[o]ur opinion on the effectiveness of internal control over financial reporting does not affect our opinion on the consolidated financial statements." Universal Travel Group Form 10-K (Mar. 5, 2010) at Item 8.

[22/]   AU § 311.05.



## ORDER

working papers contained risk assessments and planned audit procedures that were not relevant to the issuer.  The risk assessments and planned audit procedures included in the planning memorandum were copied from another company's audit and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Universal Travel audit.[23/]

19.  Audit field work occurred primarily at the issuer's headquarters in the PRC.  ACSB failed to adequately supervise the work of its assistants, including assistants from the China Firm.  ACSB failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[24/]

20.  The China Firm assistants performed a significant portion of the audit work.  ACSB failed to adequately review and supervise that work.  As a result, ACSB failed to determine whether the audit work was adequately performed and failed to evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[25/]

21.  During the Universal Travel audit, ACSB failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support its opinion on Universal Travel's 2009 financial statements.[26/]  Specifically, ACSB failed to obtain sufficient audit evidence to test the existence and valuation of Universal Travel's reported accounts receivable.  In its 2009 Form 10-K, Universal Travel reported net accounts receivable totaling $17.3 million, approximately 20% of its reported assets.  During the 2009 audit, the China Firm assistants sent out positive confirmations for receivables totaling $10.9 million or approximately 63% of the net accounts receivable balance.  However, the engagement team did not receive responses for accounts totaling one-third of the amounts selected for confirmation and ACSB failed to perform alternative procedures with respect to those nonresponses.[27/]

---

[23/]   AU § 230.

[24/]   See AU §§ 311.11 - .12; AU § 230.06.

[25/]   AU § 311.13.

[26/]   See AU § 326; AU § 230.

[27/]   See AU § 330.31, *The Confirmation Process*.



## ORDER

22.     In its 2009 Form 10-K, Universal Travel reported that it generated revenue from four lines of business, namely, air-ticketing, hotel reservations, packaged-tours, and air cargo agency services.  Universal Travel's financial statements disclosed that the issuer recognized packaged-tour revenue at the time that the tour was completed and that total revenues from its packaged-tour operations represented approximately 69% of Universal Travel's reported revenue in 2009.  ACSB failed to perform sufficient procedures to determine whether Universal Travel recognized its revenue in accordance with its disclosed policy.[28]

23.     Universal Travel's 2009 financial statements reported goodwill totaling $9.9 million or 11.5% of its total reported assets at December 31, 2009.  ACSB failed to appropriately test Universal Travel's goodwill for impairment.  The working papers contained an analysis prepared by the issuer that contained management's goodwill impairment analysis.  ACSB failed to perform sufficient procedures to test the assumptions and estimates used in management's impairment analysis.[29]  Further, ACSB failed to perform any audit procedures to corroborate management's representations concerning its impairment analysis.[30]

24.     ACSB failed to obtain sufficient competent evidential matter relating to material adjustments recorded in the issuer's consolidation at year-end, including an entry for $5 million in cash, representing 13.6% of total cash or 5.8% of Universal Travel's total reported assets at December 31, 2009.  ACSB failed to confirm or perform other audit procedures to verify the existence of this amount.[31]

### Audit of 2009 Financial Statements of Home System Group

25.     Home System Group was, at all relevant times, a Nevada corporation with its principal office in Zhongshan City, PRC.  Home System's public filings disclose that it was primarily engaged in the production of a variety of household appliances, including stainless steel gas grills and ovens, ceiling and table fans and decorative lamps.  Its common stock was registered with the Commission under Section 12(g) of the

---

[28]   AU § 326.

[29]   AU §§ 342.07, .11, *Auditing Accounting Estimates*.

[30]   AU § 333.02, *Management Representations*.

[31]   AU § 326; AU § 330.06.



PCAOB Release No. 105-2013-010
November 21, 2013
Page 10

## ORDER

Exchange Act and was traded on the OTC Bulletin Board and the Pink Sheets. At all times relevant to this Order, Home System was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

26. ACSB became the auditor for Home System on June 30, 2009. The Firm audited Home System's financial statements for the year ended December 31, 2009 and issued an unqualified opinion dated March 18, 2010, which was included in Home System's Form 10-K filed with the Commission on March 29, 2010. The audit report stated that, in ACSB's opinion, Home System's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with U.S. GAAP and that ACSB's audit was conducted in accordance with PCAOB standards.

27. The engagement team for ACSB's audit of Home System's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, an assistant from the Firm, and assistants from the China Firm.

28. ACSB failed to comply with the applicable professional standards in connection with the 2009 Home System audit. First, the Firm failed to adequately plan the audit by failing to consider the nature, extent, and timing of work to be performed.[32] The 2009 planning memorandum included in the Home System working papers contained risk assessments and planned audit procedures that were not relevant to the issuer. The risk assessments and planned audit procedures included in the planning memorandum were copied from another company's audit and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Home System audit.[33]

29. Audit field work occurred primarily at the issuer's headquarters in the PRC. ACSB failed to adequately supervise the work of its assistants, including assistants from the China Firm. ACSB failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[34]

30. The China Firm assistants performed a significant portion of the audit work. ACSB failed to adequately review and supervise that work. As a result, ACSB failed to determine whether the audit work was adequately performed and failed to

---

[32] AU § 311.05.

[33] AU § 230.

[34] See AU §§ 311.11 - .12; AU § 230.06.



**ORDER**

evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[35/]

31.     During the Home System audit, ACSB failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support its opinion on Home System's 2009 financial statements.[36/]  The issuer's 2009 financial statements reported goodwill totaling $25 million or 28% of Home System's total reported assets at December 31, 2009, the issuer's largest asset.  In the footnotes to the 2009 Home System financial statements management stated that goodwill was not impaired.  The Home System working papers contained a cash flow projection prepared by management that appeared to be an impairment analysis of the issuer's goodwill as of December 31, 2009.  ACSB failed to perform sufficient audit procedures to assess the reasonableness of the cash flow projection, including the relevance, sufficiency, and reliability of the data supporting the projection and the assumptions management made in formulating the projection.[37/]  As a result, ACSB failed to obtain sufficient competent evidential matter concerning the valuation of goodwill.

32.     Additionally, with respect to the issuer's sale of a property, Home System reported a "gain on the transfer of the building" of $2.4 million in its 2009 financial statements, representing approximately 19% of its pre-tax income for the year.  ACSB failed to perform sufficient audit procedures to test the valuation of the gain reported in the issuer's financial statements.[38/]

<u>Audit of 2009 Financial Statements of Sinocom Pharmaceutical, Inc.</u>

33.     Sinocom Pharmaceutical, Inc. was, at all relevant times, a Nevada corporation with its principal office in Hong Kong.  Sinocom's public filings disclose that it was a Chinese pharmaceutical company engaged in the wholesale distribution of pharmaceuticals and medical supplies and the cultivation and sale of natural herbs.  During the relevant period, its common stock was registered with the Commission under Section 12(g) of the Exchange Act and was traded on the OTC Bulletin Board and the

---

[35/]     AU § 311.13.

[36/]     <u>See</u> AU § 326; AU § 230.

[37/]     AU § 333; AU § 342.11.

[38/]     AU § 326.



## ORDER

Pink Sheets.[39/]  At all times relevant to this Order, Sinocom was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

34. ACSB became the auditor for Sinocom on July 1, 2009. The Firm audited Sinocom's financial statements for the year ended December 31, 2009, and issued an unqualified opinion dated March 25, 2010, which was included in Sinocom's Form 10-K filed with the Commission on March 31, 2010. The audit report stated that, in ACSB's opinion, Sinocom's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with U.S. GAAP and that ACSB's audit was conducted in accordance with PCAOB standards.

35. The engagement team for ACSB's audit of Sinocom's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, an assistant from the Firm, and assistants from the China Firm.

36. ACSB failed to comply with the applicable professional standards in connection with the 2009 Sinocom audit. First, the Firm failed to adequately plan the audit by failing to consider the nature, extent, and timing of work to be performed.[40/] The 2009 planning memorandum included in the Sinocom working papers contained risk assessments and planned audit procedures that were not relevant to the issuer. The risk assessments and planned audit procedures included in the planning memorandum were copied from another company's audit and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Sinocom audit.[41/]

37. Audit field work occurred primarily at the issuer's headquarters in Hong Kong. ACSB failed to adequately supervise the work of its assistants, including assistants from the China Firm. ACSB failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[42/]

---

[39/]   On October 14, 2011, Sinocom filed a Form 15 terminating the issuer's registration under Section 12(g) of the Exchange Act.

[40/]   AU § 311.05.

[41/]   AU § 230.

[42/]   See AU §§ 311.11 - .12; AU § 230.06.



**ORDER**

38. The China Firm assistants performed a significant portion of the audit work. ACSB failed to adequately review and supervise that work. As a result, ACSB failed to determine whether the audit work was adequately performed and failed to evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[43/]

39. During the Sinocom audit, ACSB failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support its opinion on Sinocom's 2009 financial statements.[44/] Specifically, ACSB failed to obtain sufficient competent evidential matter to test the existence and valuation of Sinocom's reported accounts receivable. Sinocom's 2009 financial statements reported accounts receivable in the amount of $22.5 million, representing 36.8% of total reported assets as of December 31, 2009. The engagement team tested accounts receivable by performing positive confirmation procedures, but selected only 27 out of approximately one thousand accounts to confirm, relating to only $7.3 million or 32% of the outstanding balance at year-end. ACSB did not receive responses relating to accounts totaling $1.8 million, or 24% of the amounts selected for confirmation and it failed to perform alternative procedures relating to these accounts. In light of the non-responses, ACSB should have performed alternative procedures to obtain the necessary evidence.[45/] In addition, the accounts selected for confirmation were chosen based upon a dollar threshold and therefore did not include a representative sample of the total accounts receivable population as of year-end.[46/] ACSB failed to perform sufficient procedures to test the remaining 68% of the accounts receivable balance that it did not select for confirmation during the 2009 audit.[47/]

40. Sinocom's 2009 financial statements reported cash in the amount of $34.4 million, representing 56.2% of total reported assets as of December 31, 2009. ACSB failed to obtain sufficient competent evidential matter relating to approximately a third of the reported cash balance or 18.9% of total reported assets as of December 31, 2009.

---

[43/]   AU § 311.13.

[44/]   See AU § 326; AU § 230.

[45/]   AU § 326; AU § 330.31.

[46/]   See AU §§ 350.21, .24, *Audit Sampling*.

[47/]   AU § 326.



PCAOB Release No. 105-2013-010
November 21, 2013
Page 14

## ORDER

ACSB failed to confirm or perform other audit procedures to verify the existence of this amount.[48]

41.  ACSB failed to obtain sufficient competent evidential matter relating to Sinocom's accounts payable. Sinocom's 2009 financial statements reported total liabilities of $18.5 million which included accounts payable of $14.8 million, or 80% of total reported liabilities as of December 31, 2009. ACSB failed to perform adequate procedures to test the valuation of the year-end accounts payable balance. The China Firm assistants selected 31 accounts for positive confirmation, but only received responses for six accounts. Confirmations for which it did not receive a response totaled $8.6 million, representing 83.9% of the amounts for which confirmations were requested. ACSB failed to perform any alternative procedures with respect to those nonresponses[49] and failed to perform any other procedures to test the valuation of accounts payable at year-end.[50]

42.  ACSB also failed to obtain sufficient competent evidential matter relating to the completeness of the year-end accounts payable balance.[51] The Firm's working papers contained an audit program for accounts payable that indicated that the Firm planned to perform a search for unrecorded liabilities. However, the engagement team failed to perform this planned procedure or any other procedures to test the completeness of the accounts payable balance.

F.   **Respondent Violated PCAOB Rules and Standards and Section 10A of the Exchange Act**

43.  PCAOB rules and standards require that a registered public accounting firm and its associated persons be independent of the firm's audit client throughout the audit and professional engagement period.[52] "[A] registered public accounting firm or associated person's independence obligation with respect to an audit client that is an issuer encompasses not only an obligation to satisfy the independence criteria set out in

---

[48]   AU § 326; AU § 330.06.

[49]   AU § 330.31; AU § 326.

[50]   AU § 326.

[51]   Id.

[52]   See PCAOB Rule 3520, *Auditor Independence*; see also AU § 220, *Independence*.



# ORDER

the rules and standards of the PCAOB, but also an obligation to satisfy all other independence criteria applicable to the engagement, including the independence criteria set out in the rules and regulations of the Commission under the federal securities laws."[53]

      44.    Section 10A(g)(1) of the Exchange Act prohibits an accounting firm and any associated person from performing certain non-audit services including "bookkeeping or other services related to the accounting records or financial statements of the audit client."

      45.    Rule 2-01 (c)(4)(i) of Commission Regulation S-X provides that an accountant is not independent if, at any point during the audit and professional engagement period, the accountant prepares the audit client's financial statements that are filed with the Commission or that form the basis of financial statements filed with the Commission.

      46.    With respect to the 2009 Universal Travel and Sinocom audits, Svoboda, the auditor with final responsibility, prepared the consolidation and financial statements that formed the basis of these issuers' financial statements that were included in the issuers' Forms 10-K filed with the Commission. As a result, ACSB failed to comply with Section 10A(g) of the Exchange Act, PCAOB Rule 3520, and AU § 220.

**IV.**

      In view of the foregoing, and to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports, the Board determines it appropriate to impose the sanctions agreed to in Respondent's Offer. Accordingly, it is hereby ORDERED that:

    A.    Pursuant to Section 105(c)(4)(E) of the Act and PCAOB Rule 5300(a)(5) Acquavella, Chiarelli, Shuster, Berkower & Co., LLP is hereby censured;

    B.    Pursuant to Section 105(c)(4)(A) of the Act and PCAOB Rule 5300(a)(1), the registration of Acquavella, Chiarelli, Shuster, Berkower & Co., LLP is revoked;

---

      [53]    <u>See</u> PCAOB Rule 3520, Note 1.



# ORDER

C. After two (2) years from the date of this Order, Acquavella, Chiarelli, Shuster, Berkower & Co., LLP may reapply for registration by filing an application pursuant to PCAOB Rule 2101; and

D. Pursuant to Section 105(c)(4)(D) of the Act and PCAOB Rule 5300(a)(4), a civil money penalty in the amount of $10,000 is imposed upon Acquavella, Chiarelli, Shuster, Berkower & Co., LLP. All funds collected by the Board as a result of the assessment of this civil money penalty will be used in accordance with Section 109(c)(2) of the Act. Acquavella, Chiarelli, Shuster, Berkower & Co., LLP shall pay this civil money penalty within 10 days of the issuance of this Order by (a) wire transfer in accordance with instructions furnished by Board staff; or (b) United States postal money order, certified check, bank cashier's check or bank money order; (c) made payable to the Public Company Accounting Oversight Board; (d) delivered to the Controller, Public Company Accounting Oversight Board, 1666 K Street, N.W., Washington, D.C. 20006; and (e) submitted under a cover letter which identifies Acquavella, Chiarelli, Shuster, Berkower & Co., LLP as a Respondent in these proceedings, sets forth the title and PCAOB Release Number of these proceedings, and states that payment is made pursuant to this Order, a copy of which cover letter and money order or check shall be sent to the Office of the Secretary, Attention: Phoebe Brown, Secretary, Public Company Accounting Oversight Board, 1666 K Street, N.W., Washington, D.C. 20006.

ISSUED BY THE BOARD.

/s/ Phoebe W. Brown
_____
Phoebe W. Brown
Secretary

November 21, 2013