# EXHIBIT 3



1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-8430
Facsimile: (202) 862-0757
www.pcaobus.org

|  |  |
|---|---|
| ORDER INSTITUTING DISCIPLINARY PROCEEDINGS, MAKING FINDINGS, AND IMPOSING SANCTIONS<br><br>*In the Matter of David T. Svoboda, CPA,*<br><br>*Respondent.* | PCAOB Release No. 105-2013-011<br><br>November 21, 2013 |

By this Order, the Public Company Accounting Oversight Board (the "Board" or "PCAOB") is censuring David T. Svoboda, CPA ("Svoboda" or "Respondent"), and barring him from being an associated person of a registered accounting firm.[1/] The Board is imposing these sanctions on the basis of its findings that Svoboda: (a) violated PCAOB rules and auditing standards in connection with the audits of three issuer clients and the improper creation, addition, and backdating of audit documentation prior to a Board inspection; (b) directly and substantially contributed to a registered public accounting firm's violation of PCAOB quality control standards; and (c) violated Section 10A(g) of the Securities Exchange Act of 1934 ("Exchange Act") and PCAOB rules and standards in connection with the audits of two issuer clients.

**I.**

The Board deems it necessary and appropriate, for the protection of investors and to further the public interest in the preparation of informative, accurate and independent audit reports, that disciplinary proceedings be, and hereby are, instituted pursuant to Section 105(c) of the Sarbanes-Oxley Act of 2002, as amended ("Act"), and PCAOB Rule 5200(a)(1) against Respondent.

**II.**

In anticipation of the institution of these proceedings, and pursuant to PCAOB Rule 5205, Respondent has submitted an Offer of Settlement ("Offer") that the Board has determined to accept. Solely for purposes of these proceedings and any other

---

[1/]  Svoboda may file a petition for Board consent to associate with a registered public accounting firm after three (3) years from the date of this Order.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 2

## ORDER

proceedings brought by or on behalf of the Board, or to which the Board is a party, and without admitting or denying the findings herein, except as to the Board's jurisdiction over Respondent and the subject matter of these proceedings, which is admitted, Respondent consents to entry of this Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions ("Order") as set forth below.[2]

### III.

On the basis of Respondent's Offer and information obtained by the Board in this matter, the Board finds[3] that:

**A.  Respondent**

1.  David T. Svoboda, age 53, of Bohemia, New York, is, and was at all relevant times, a certified public accountant licensed in the State of New York (License No. 083271). At all relevant times, Svoboda was a non-equity partner at Acquavella, Chiarelli, Shuster, Berkower & Co., LLP ("ACSB" or the "Firm"),[4] and was an associated person of a registered public accounting firm as that term is defined in Section 2(a)(9) of the Act and PCAOB Rule 1001(p)(i). At all relevant times, Svoboda was one of only two ACSB partners performing audits of public companies and was the leader of the Firm's public company audit practice. He was the auditor with final responsibility for the audits of the financial statements for the issuers identified in paragraph 2 below. Svoboda's employment with the Firm ended on or about September 30, 2011.

---

[2]  The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in this or any other proceeding.

[3]  The sanctions that the Board is imposing on Respondent in this Order may be imposed only if a respondent's conduct meets one of the conditions set out in Section 105(c)(5) of the Act, 15 U.S.C. § 7215(c)(5). The Board finds that Respondent's conduct described in this Order meets the condition set out in Section 105(c)(5), which provides that such sanctions may be imposed in the event of: (A) intentional or knowing conduct, including reckless conduct, that results in a violation of the applicable statutory, regulatory, or professional standard; or (B) repeated instances of negligent conduct, each resulting in a violation of the applicable statutory, regulatory, or professional standard.

[4]  See Acquavella, Chiarelli, Shuster, Berkower & Co., LLP, PCAOB Release No. 105-2013-010 (Nov. 21, 2013).



PCAOB Release No. 105-2013-011
November 21, 2013
Page 3

# ORDER

**B.   Summary**

2.   This matter concerns Svoboda's failure to comply with PCAOB rules and auditing standards in connection with the audits of the 2009 financial statements of three issuer clients (collectively, "the Audits").[5/] In each of the Audits, Svoboda was the auditor with final responsibility and authorized issuance of the Firm's audit report. As detailed below, Svoboda failed to: (1) adequately supervise engagement personnel; (2) adequately plan and perform audit procedures related to the Audits; and (3) exercise due care and professional skepticism.

3.   In addition, this matter concerns Svoboda's failure to comply with PCAOB Rule 4006, *Duty to Cooperate with Inspectors,* and Auditing Standard No. 3, *Audit Documentation* ("AS3"). In advance of the Board's inspection of the Firm in 2010, Svoboda, or those working at his direction, improperly created or altered audit documentation and added that documentation to the working papers in violation of Rule 4006. Further, in violation of AS3, the created or altered documentation did not indicate the date the documents were created or altered and added to the working papers, the name of the person who did so, or the reason for doing so.

4.   During the relevant period, Svoboda was the partner in charge of the Firm's public company practice and was designated by the Firm as having responsibility for the quality of that practice. Despite those responsibilities, during the Audits, Svoboda took or omitted to take actions knowing, or recklessly not knowing, that his acts and/or omissions would directly and substantially contribute to ACSB's violation of PCAOB quality control standards, in contravention of PCAOB Rule 3502, *Responsibility Not to Knowingly or Recklessly Contribute to Violations*.

5.   Lastly, this matter concerns Svoboda's failure to comply with Section 10A(g) of the Exchange Act and PCAOB rules and standards that require a registered public accounting firm and its associated persons to be independent of the firm's audit client throughout the audit and professional engagement period. Specifically, with respect to two of the Audits, Svoboda prepared the consolidation and financial statements for the issuers.

---

[5/]   Specifically, the Audits consist of ACSB's audits of the 2009 financial statements of: (a) Universal Travel Group ("Universal Travel"); (b) Home System Group ("Home System"); and (c) Sinocom Pharmaceutical, Inc. ("Sinocom").



PCAOB Release No. 105-2013-011
November 21, 2013
Page 4

# ORDER

### D.  Respondent Violated PCAOB Rules and Auditing Standards

6.  In connection with the preparation or issuance of an audit report, PCAOB rules require that a registered public accounting firm and its associated persons comply with the Board's auditing and related professional practice standards.[6/]  An auditor may express an unqualified opinion on an issuer's financial statements only when the auditor has formed such an opinion on the basis of an audit performed in accordance with PCAOB standards.[7/]  Among other things, PCAOB standards require that an auditor exercise due professional care, exercise professional skepticism, and obtain sufficient competent evidential matter to afford a reasonable basis for an opinion regarding the financial statements.[8/]

7.  PCAOB auditing standards require that the auditor with final responsibility for the audit adequately plan the audit and supervise any assistants.[9/]  "Supervision involves directing the efforts of assistants who are involved in accomplishing the objectives of the audit and determining whether those objectives were accomplished."[10/]

8.  As detailed below, Svoboda failed to comply with these auditing standards in connection with the Audits.

### Audit of 2009 Financial Statements of Universal Travel Group

9.  Universal Travel Group was, at all relevant times, a Nevada corporation with its principal office in Shenzhen, the People's Republic of China ("PRC").  Universal Travel's public filings disclosed that it was a travel services provider engaged in providing air ticketing, hotel booking and packaged tourism services throughout the PRC via the internet, customer representatives and kiosks.  During the relevant period,

---

[6/]  See PCAOB Rules 3100, *Compliance with Auditing and Related Professional Practice Standards* and 3200T, *Interim Auditing Standards*.

[7/]  AU § 508.07, *Reports on Audited Financial Statements.*  All references to PCAOB auditing standards are to the versions of those standards in effect at the time of the audits.

[8/]  AU § 150.02, *Generally Accepted Auditing Standards*; AU § 230, *Due Professional Care in the Performance of Work*; and AU § 326, *Evidential Matter*.

[9/]  AU § 311, *Planning and Supervision*.

[10/]  AU § 311.11.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 5

## ORDER

Universal Travel's common stock was registered with the Securities and Exchange Commission ("Commission") under the Exchange Act and was traded at various times on the OTC Bulletin Board, New York Stock Exchange ("NYSE") Amex, and NYSE.[11/] At all relevant times, Universal Travel was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

10.   ACSB became the auditor for Universal Travel on June 30, 2009.  The Firm audited Universal Travel's financial statements for the year ended December 31, 2009 and issued an unqualified opinion dated February 22, 2010, which was included in Universal Travel's Form 10-K filed with the Commission on March 5, 2010.[12/]  The audit report stated that, in ACSB's opinion, Universal Travel's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with accounting principles generally accepted in the United States ("U.S. GAAP"), and that ACSB's audit was conducted in accordance with PCAOB standards.

---

[11/]   From January 1, 2009 through May 28, 2009 Universal Travel's common stock was registered under Section 12(g) of the Exchange Act and was traded on the OTC Bulletin Board.  On April 14, 2009, the issuer filed a registration statement to register its common stock under Section 12(b) of the Exchange Act in connection with its listing on the NYSE Amex Market.  On May 28, 2009, Universal Travel's common stock began trading on the NYSE Amex and also continued to trade on the OTC Bulletin Board.  On October 27, 2009 Universal Travel's common stock began trading on the New York Stock Exchange.  On April 26, 2012 the issuer filed a Form 25, Notification of Removal from Listing and/or Registration under Section 12(b) of the Exchange Act, voluntarily withdrawing its common stock from listing and registration on the NYSE.  On September 27, 2013, the Commission issued an order revoking the registration of Universal Travel's securities due to the issuer's failure to file periodic reports with the Commission since September 30, 2011.

[12/]   Although the Firm's audit opinion on the 2009 financial statements was unqualified, the Firm expressed an adverse opinion on Universal Travel's internal control over financial reporting, noting the identification of two material weaknesses including:  "Lack of technical accounting expertise among financial staff regarding US GAAP and the requirements of the PCAOB, and regarding preparation of financial statements."  The Firm's combined report stated that because of the effect of those material weaknesses "Universal Travel Group did not maintain effective internal control over financial reporting as of December 31, 2009," but that "[o]ur opinion on the effectiveness of internal control over financial reporting does not affect our opinion on the consolidated financial statements."  Universal Travel Group Form 10-K (Mar. 5, 2010) at Item 8.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 6

**ORDER**

11. The engagement team for ACSB's audit of Universal Travel's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, two assistants from the Firm, and assistants from a firm based in the PRC ("the China Firm").

12. Svoboda failed to comply with the applicable professional standards in connection with the 2009 Universal Travel audit. First, Svoboda failed to adequately plan the audit by failing to consider, or ensure his assistants considered, the nature, extent, and timing of work to be performed.[13] The 2009 planning memorandum included in the Universal Travel working papers contained risk assessments and planned audit procedures that were not relevant to the issuer. The risk assessments and planned audit procedures included in the planning memorandum were copied from another company's audit and Svoboda and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Universal Travel audit.[14]

13. Audit field work occurred primarily at the issuer's headquarters in the PRC. Svoboda failed to adequately supervise the work of his assistants, including assistants from the China Firm. He failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[15]

14. The China Firm assistants performed a significant portion of the audit work. Svoboda failed to adequately review and supervise that work. As a result, he failed to determine whether the audit work was adequately performed and failed to evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[16]

15. During the Universal Travel audit, Svoboda failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support ACSB's opinion on Universal Travel's 2009 financial statements.[17] Specifically, Svoboda failed to obtain, or ensure the engagement team obtained, sufficient audit

---

[13] AU § 311.05.

[14] AU § 230.

[15] See AU §§ 311.11 - .12; AU § 230.06.

[16] AU § 311.13.

[17] See AU § 326; AU § 230.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 7

## ORDER

evidence to test the existence and valuation of Universal Travel's reported accounts receivable. In its 2009 Form 10-K, Universal Travel reported net accounts receivable totaling $17.3 million, approximately 20% of its reported assets. During the 2009 audit, the China Firm assistants working for Svoboda sent out positive confirmations for receivables totaling $10.9 million or approximately 63% of the net accounts receivable balance. However, the engagement team did not receive responses for accounts totaling one-third of the amounts selected for confirmation and Svoboda failed to perform, or ensure the engagement team performed, alternative procedures with respect to those nonresponses.[18]

16. In its 2009 Form 10-K, Universal Travel reported that it generated revenue from four lines of business, namely, air-ticketing, hotel reservations, packaged-tours, and air cargo agency services. Universal Travel's financial statements disclosed that the issuer recognized packaged-tour revenue at the time that the tour was completed and that total revenues from its packaged-tour operations represented approximately 69% of Universal Travel's reported revenue in 2009. Svoboda and the engagement team failed to perform sufficient procedures to determine whether Universal Travel recognized its revenue in accordance with its disclosed policy.[19]

17. Universal Travel's 2009 financial statements reported goodwill totaling $9.9 million or 11.5% of its total reported assets at December 31, 2009. Svoboda failed to appropriately test, or ensure that the engagement team appropriately tested, Universal Travel's goodwill for impairment. The working papers contained an analysis prepared by the issuer that contained management's goodwill impairment analysis. Svoboda failed to perform, or ensure that the engagement team performed, sufficient procedures to test the assumptions and estimates used in management's impairment analysis.[20] Further, Svoboda and the engagement team failed to perform any audit procedures to corroborate management's representations concerning its impairment analysis.[21]

18. Svoboda failed to obtain, or ensure that the engagement team obtained, sufficient competent evidential matter relating to material adjustments recorded in the issuer's consolidation at year-end, including an entry for $5 million in cash, representing

---

[18] See AU § 330.31, *The Confirmation Process*.

[19] AU § 326.

[20] AU §§ 342.07, .11, *Auditing Accounting Estimates*.

[21] AU § 333.02, *Management Representations*.



## ORDER

13.6% of total cash or 5.8% of Universal Travel's total reported assets at December 31, 2009. Svoboda and the engagement team failed to confirm or perform other audit procedures to verify the existence of this amount.[22]

### Audit of 2009 Financial Statements of Home System Group

19. Home System Group was, at all relevant times, a Nevada corporation with its principal office in Zhongshan City, PRC. Home System's public filings disclose that it was primarily engaged in the production of a variety of household appliances, including stainless steel gas grills and ovens, ceiling and table fans and decorative lamps. Its common stock was registered with the Commission under Section 12(g) of the Exchange Act and was traded on the OTC Bulletin Board and the Pink Sheets. At all times relevant to this Order, Home System was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

20. ACSB became the auditor for Home System on June 30, 2009. ACSB audited Home System's financial statements for the year ended December 31, 2009 and issued an unqualified opinion dated March 18, 2010, which was included in Home System's Form 10-K filed with the Commission on March 29, 2010. The audit report stated that, in ACSB's opinion, Home System's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with U.S. GAAP and that ACSB's audit was conducted in accordance with PCAOB standards.

21. The engagement team for ACSB's audit of Home System's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, an assistant from the Firm, and assistants from the China Firm.

22. Svoboda failed to comply with the applicable professional standards in connection with the 2009 Home System audit. First, Svoboda failed to adequately plan the audit by failing to consider, or ensure his assistants considered, the nature, extent, and timing of work to be performed.[23] The 2009 planning memorandum included in the Home System working papers contained risk assessments and planned audit procedures that were not relevant to the issuer. The risk assessments and planned audit procedures included in the planning memorandum were copied from another

---

[22]   AU § 326; AU § 330.06.

[23]   AU § 311.05.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 9

## ORDER

company's audit and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Home System audit.[24]

23. Audit field work occurred primarily at the issuer's headquarters in the PRC. Svoboda failed to adequately supervise the work of his assistants, including assistants from the China Firm. He failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[25]

24. The China Firm assistants performed a significant portion of the audit work. Svoboda failed to adequately review and supervise that work. As a result, he failed to determine whether the audit work was adequately performed, and failed to evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[26]

25. During the Home System audit, Svoboda failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support ACSB's opinion on Home System's 2009 financial statements.[27] The issuer's 2009 financial statements reported goodwill totaling $25 million or 28% of Home System's total reported assets at December 31, 2009, the issuer's largest asset. In the footnotes to the 2009 Home System financial statements, management stated that goodwill was not impaired. The Home System working papers contained a cash flow projection prepared by management that appeared to be an impairment analysis of the issuer's goodwill as of December 31, 2009. Svoboda failed to perform, or ensure the engagement team performed, sufficient audit procedures to assess the reasonableness of the cash flow projection, including the relevance, sufficiency, and reliability of the data supporting the projection and the assumptions management made in formulating the projection.[28] As a result, Svoboda failed to obtain, or ensure the engagement team obtained, sufficient competent evidential matter concerning the valuation of goodwill.

---

[24]   AU § 230.

[25]   See AU §§ 311.11 - .12; AU § 230.06.

[26]   AU § 311.13.

[27]   See AU § 326; AU § 230.

[28]   AU § 333; AU § 342.11.



**ORDER**

26. Additionally, with respect to the issuer's sale of a property, Home System reported a "gain on the transfer of the building" of $2.4 million in its 2009 financial statements, representing approximately 19% of its pre-tax income for the year. Svoboda failed to perform, or ensure the engagement team performed, sufficient audit procedures to test the valuation of the gain reported in the issuer's financial statements.[29]

<u>Audit of 2009 Financial Statements of Sinocom Pharmaceutical, Inc.</u>

27. Sinocom Pharmaceutical, Inc. was, at all relevant times, a Nevada corporation with its principal office in Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"). Sinocom's public filings disclose that it was a Chinese pharmaceutical company engaged in the wholesale distribution of pharmaceuticals and medical supplies and the cultivation and sale of natural herbs. During the relevant period, its common stock was registered with the Commission under Section 12(g) of the Exchange Act and was traded on the OTC Bulletin Board and the Pink Sheets.[30] At all times relevant to this Order, Sinocom was an "issuer" as defined by Section 2(a)(7) of the Act and PCAOB Rule 1001(i)(iii).

28. ACSB became the auditor for Sinocom on July 1, 2009. The Firm audited Sinocom's financial statements for the year ended December 31, 2009, and issued an unqualified opinion dated March 25, 2010, which was included in Sinocom's Form 10-K filed with the Commission on March 31, 2010. The audit report stated that, in ACSB's opinion, Sinocom's financial statements presented fairly, in all material respects, the issuer's financial position in conformity with U.S. GAAP and that ACSB's audit was conducted in accordance with PCAOB standards.

29. The engagement team for ACSB's audit of Sinocom's 2009 financial statements consisted of Svoboda, as the auditor with final responsibility, an assistant from the Firm, and assistants from the China Firm.

30. Svoboda failed to comply with the applicable professional standards in connection with the 2009 Sinocom audit. First, Svoboda failed to adequately plan the audit by failing to consider, or ensure his assistants considered, the nature, extent, and timing of work to be performed.[31] The 2009 planning memorandum included in the

---

[29] See AU § 326.

[30] On October 14, 2011, Sinocom filed a Form 15 terminating the issuer's registration under Section 12(g) of the Exchange Act.

[31] AU § 311.05; AU § 230.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 11

## ORDER

Sinocom working papers contained risk assessments and planned audit procedures that were not relevant to the issuer. The risk assessments and planned audit procedures included in the planning memorandum were copied from another company's audit and the engagement team failed to exercise due care to ensure that they were appropriate for the 2009 Sinocom audit.[32/]

31. Audit field work occurred primarily at the issuer's headquarters in Hong Kong. Svoboda failed to adequately supervise the work of his assistants, including assistants from the China Firm. He failed to adequately direct the efforts of the assistants involved in accomplishing the objectives of the audit, including informing them of the objectives of the procedures that they were to perform.[33/]

32. The China Firm assistants performed a significant portion of the audit work. Svoboda failed to adequately review and supervise that work. As a result, he failed to determine whether the audit work was adequately performed and failed to evaluate whether the results of the audit work were consistent with the conclusions to be presented in the audit report.[34/]

33. During the Sinocom audit, Svoboda failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support its opinion on Sinocom's 2009 financial statements.[35/] Specifically, Svoboda failed to obtain, or ensure the engagement team obtained, sufficient competent evidential matter to test the existence and valuation of Sinocom's reported accounts receivable. Sinocom's 2009 financial statements reported accounts receivable in the amount of $22.5 million, representing 36.8% of total reported assets as of December 31, 2009. Svoboda and the engagement team tested accounts receivable by performing positive confirmation procedures but selected only 27 out of approximately one thousand accounts to confirm, relating to only $7.3 million or 32% of the outstanding balance at year-end. Svoboda and the engagement team did not receive responses relating to accounts totaling $1.8 million, or 24% of the amounts selected for confirmation and the engagement team failed to perform alternative procedures relating to these accounts. In light of the non-responses, Svoboda should have performed, or ensured the engagement team performed, alternative procedures to obtain the necessary

---

[32/] AU § 230.

[33/] See AU §§ 311.11 - .12; AU § 230.06.

[34/] AU § 311.13.

[35/] AU § 326; AU § 230.



## ORDER

evidence.[36]  In addition, the accounts selected for confirmation were chosen based upon a dollar threshold and therefore did not include a representative sample of the total accounts receivable population as of year-end.[37]  Svoboda failed to perform, or ensure the engagement team performed, sufficient procedures to test the remaining 68% of the accounts receivable balance that the engagement team did not select for confirmation during the 2009 audit.[38]

34. Sinocom's 2009 financial statements reported cash in the amount of $34.4 million, representing 56.2% of total reported assets as of December 31, 2009.  Svoboda failed to obtain, or ensure the engagement team obtained, sufficient competent evidential matter relating to approximately a third of the reported cash balance or 18.9% of total reported assets as of December 31, 2009.  Svoboda and the engagement team failed to confirm or perform other audit procedures to verify the existence of this amount.[39]

35. Svoboda failed to obtain, or ensure the engagement team obtained, sufficient competent evidential matter relating to Sinocom's accounts payable. Sinocom's 2009 financial statements reported total liabilities of $18.5 million which included accounts payable of $14.8 million, or 80% of total reported liabilities as of December 31, 2009.  Svoboda failed to perform, or ensure the engagement team performed, adequate procedures to test the valuation of the year-end accounts payable balance.  The China Firm assistants selected 31 accounts for positive confirmation but only received responses for six accounts.  Confirmations for which the engagement team did not receive a response totaled $8.6 million, representing 83.9% of the amounts for which confirmations were requested.  Svoboda failed to perform, or ensure that the engagement team performed, any alternative procedures with respect to those nonresponses[40] and failed to perform any other procedures to test the valuation of accounts payable at year-end.[41]

---

[36]   AU § 326; AU § 330.31.

[37]   See AU §§ 350.21, .24, *Audit Sampling*.

[38]   AU § 326.

[39]   AU § 326; AU § 330.06.

[40]   AU § 330.31.

[41]   AU § 326.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 13

**ORDER**

36. Svoboda also failed to obtain, or ensure that the engagement team obtained, sufficient competent evidential matter relating to the completeness of the year-end accounts payable balance.[42] The Firm's working papers contained an audit program for accounts payable that indicated that the Firm planned to perform a search for unrecorded liabilities. However, Svoboda failed to perform, or ensure the engagement team performed, this planned procedure or any other procedures to test the completeness of the accounts payable balance.

**E.    Respondent Violated PCAOB Rule 4006 and AS3**

37. PCAOB rules require that an associated person of a registered public accounting firm "shall cooperate with the Board in the performance of any Board inspection."[43] This cooperation obligation "includes an obligation not to provide misleading documents or information in connection with the Board's inspection processes."[44] PCAOB auditing standards require that an auditor make certain written disclosures if the auditor adds documentation to the audit working papers after the "documentation completion date," which is the date (not more than 45 days after the audit report release date) when a "complete and final set of audit documentation should be assembled for retention."[45] Specifically, information added to the working papers after the documentation completion date must disclose the date the information was added, the name of the person preparing the additional information, and the reason for adding the information to the working papers after the documentation completion date.[46]

38. ACSB released its audit opinions on the Universal Travel, Home System, and Sinocom 2009 financial statements on February 22, 2010, March 18, 2010, and March 25, 2010, respectively. The documentation completion dates for these audits,

---

[42]    Id.

[43]    PCAOB Rule 4006.

[44]    Peter C. O'Toole, CPA, PCAOB Release No. 105-2011-005 (Aug. 1, 2011) ¶ 5. See also Gately & Associates, LLC, SEC Release No. 34-62656 at 22-23 (Aug. 5, 2010) (sustaining Board finding that respondents failed to cooperate with Board inspection).

[45]    AS3 ¶¶ 15-16.

[46]    AS3 ¶ 16.



**ORDER**

therefore, were dates no later than April 8, 2010, May 2, 2010, and May 9, 2010, respectively:  45 days after the report release dates.[47/]

39.     On March 25, 2010, Svoboda learned that the Board would inspect ACSB the week of June 28, 2010.  On May 27, 2010, in anticipation of the upcoming visit by the PCAOB inspection team, Svoboda held a meeting with certain ACSB staff.  At that meeting Svoboda directed ACSB staff to add missing documents to the working papers for the Universal Travel, Home Systems and Sinocom audits and to backdate certain documents to make it appear the documents were prepared and added to the working papers prior to the documentation completion date.  Thereafter, Svoboda and staff working under his supervision created or altered documents and added them to the work papers.  After subsequently learning that the Board's inspectors planned to inspect the Universal Travel and Home System audits, Svoboda and those working at his direction, provided the Board's inspectors with the misleading documents and information relating to those two audits.  At no point in time did Svoboda inform or instruct others to inform the Board's inspectors that these modifications to the working papers were made shortly before, and in anticipation of, the Board's inspection.  This conduct violated PCAOB Rule 4006.

40.     Svoboda and the staff working under his direction failed to indicate the dates that the modifications and additions were made to the working papers, the name of the person making the modifications and additions, and the reasons for making these modifications and additions to the Universal Travel, Home System and Sinocom working papers after the documentation completion date.  This conduct failed to comply with AS3.

F.     **Respondent Violated PCAOB Rule 3502**

41.     PCAOB rules require that a registered public accounting firm comply with the Board's quality control standards.[48/]  PCAOB quality control standards require that a registered public accounting firm "shall have a system of quality control for its accounting and auditing practice."[49/]  Policies and procedures should be established to provide the firm with reasonable assurance that work "is assigned to personnel having

---

[47/]     AS3 ¶ 15.

[48/]     PCAOB Rules 3100 and 3400T, *Interim Quality Control Standards*.

[49/]     QC § 20.02, *System of Quality Control for a CPA Firm's Accounting and Auditing Practice*.



## ORDER

the degree of technical training and proficiency required in the circumstances."[50] PCAOB quality control standards also state that policies and procedures "should be established to provide the firm with reasonable assurance that the work performed by engagement personnel meets applicable professional standards, regulatory requirements, and the firm's standards of quality."[51]

42.     PCAOB rules also prohibit an associated person of a registered public accounting firm from taking or omitting to take an action knowing, or recklessly not knowing, that the act or omission would directly and substantially contribute to a violation of Board standards by that firm.[52]  As detailed below, ACSB failed to comply with PCAOB quality control standards in connection with the Audits, and Svoboda took, or omitted to take, actions that he knew, or was reckless in not knowing, would directly and substantially contribute to ACSB's violations.

43.     During the relevant period, Svoboda was the partner in charge of the Firm's public company practice and was designated by the Firm as having responsibility for the quality of that practice.  In his capacity as the partner in charge of quality control for the public company practice, Svoboda failed to implement quality control policies and procedures to ensure that engagement personnel had the degree of technical training and proficiency required in the circumstances.[53]  Svoboda failed to control which individuals from the China Firm were assigned to the Audits.  Svoboda failed to adequately assess the China Firm assistants' competency in U.S. GAAP and knowledge of PCAOB rules and standards.  Svoboda also failed to provide any training to the China Firm assistants in PCAOB standards prior to the Audits.

44.     Svoboda also failed to implement policies and procedures to ensure that engagement personnel performed audit procedures necessary to comply with PCAOB standards.[54]  As detailed above, for each of the Audits, Svoboda failed to adequately supervise and review the work of his assistants.  As a result, in multiple instances, ACSB staff members failed to complete necessary audit work before the Firm released its audit reports for the Audits.

---

[50]     QC § 20.13; see also AU § 230.06.

[51]     QC § 20.17.

[52]     PCAOB Rule 3502.

[53]     QC § 20.13; see also AU § 230.06.

[54]     QC §§ 20.03, .17.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 16

**ORDER**

### G.  Respondent Violated PCAOB Rules and Standards, and Section 10A of the Exchange Act

45.  PCAOB rules and standards require that a registered public accounting firm and its associated persons be independent of the firm's audit client throughout the audit and professional engagement period.[55/] "[A] registered public accounting firm or associated person's independence obligation with respect to an audit client that is an issuer encompasses not only an obligation to satisfy the independence criteria set out in the rules and standards of the PCAOB, but also an obligation to satisfy all other independence criteria applicable to the engagement, including the independence criteria set out in the rules and regulations of the Commission under the federal securities laws."[56/]

46.  Section 10A(g)(1) of the Exchange Act prohibits an accounting firm and any associated person from performing certain non-audit services including "bookkeeping or other services related to the accounting records or financial statements of the audit client."

47.  Rule 2-01 (c)(4)(i) of Commission Regulation S-X provides that an accountant is not independent if, at any point during the audit and professional engagement period, the accountant prepares the audit client's financial statements that are filed with the Commission or that form the basis of financial statements filed with the Commission.

48.  With respect to the 2009 Universal Travel and Sinocom audits, Svoboda, the auditor with final responsibility, prepared the consolidation and financial statements that formed the basis of these issuer's financial statements that were included in issuers' Forms 10-K filed with the Commission.  As a result, Svoboda failed to comply with Section 10A(g) of the Exchange Act, PCAOB Rule 3520 and AU § 220.

### IV.

In view of the foregoing, and to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports, the Board determines it appropriate to impose the sanctions agreed to in Respondent's Offer.  Accordingly, it is hereby ORDERED that:

---

[55/]  See PCAOB Rule 3520, *Auditor Independence*; see also  AU § 220, *Independence*.

[56/]  See PCAOB Rule 3520, Note 1.



PCAOB Release No. 105-2013-011
November 21, 2013
Page 17

## ORDER

A. Pursuant to Section 105(c)(4)(E) of the Act and PCAOB Rule 5300(a)(5) David T. Svoboda, CPA, is hereby censured;

B. Pursuant to Section 105(c)(4)(B) of the Act and PCAOB Rule 5300(a)(2), David T. Svoboda, CPA, is barred from being an associated person of a registered accounting firm as that term is defined in Section 2(a)(9) of the Act and PCAOB Rule 1001(p)(i); and

C. After three (3) years from the date of this Order, David T. Svoboda, CPA, may file a petition, pursuant to PCAOB Rule 5302(b), for Board consent to associate with a registered public accounting firm.

ISSUED BY THE BOARD.

/s/ Phoebe W. Brown
_____
Phoebe W. Brown
Secretary

November 21, 2013