# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES SECURITIES )
AND EXCHANGE COMMISSION )
100 F Street, N.E. )
Washington DC 20549, )
                                              )     Case No. _____
       Plaintiff, )
                                              )
    v. )
                                              )
UNIVERSAL TRAVEL GROUP, )
JIANGPING JIANG, and JING XIE, )
                                              )
       Defendants. )

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or "SEC"), alleges:

### SUMMARY

1. In this fraud action, the defendants, Universal Travel Group (UTG), a travel company based in the People's Republic of China ("PRC"); UTG's former Chief Executive Officer Jiangping Jiang ("Jiang"); and UTG's former Chief Financial Officer, Jing Xie ("Xie"), raised approximately $41 million in public and private stock offerings in the United States and defrauded UTG's investors by failing to disclose the risky transfer of the proceeds to numerous unknown parties in Hong Kong and the PRC. The defendants have failed properly to account for the return of those funds to UTG.

2. After raising the $41 million in public and private stock offerings, Jiang and Xie dispersed the proceeds through a complex series of cash transfers involving at least 36 different

companies and individuals. The transfers were made from a UTG bank account in Hong Kong between September 2008 and March 2011. Certain company records reflect the return of the funds, but UTG has not provided a verifiable audit trail establishing that the funds ever returned to the company.

3. UTG, Jiang and Xie exposed the offering proceeds to significant undisclosed risks, such as risk of theft and fraud, by making the transfers. Further, because UTG was unable to access the funds while in transit, the defendants also impaired UTG's liquidity.

4. In its June 2010 public offering documents, UTG misrepresented its intended use of the offering proceeds as it did not use all of the funds raised to complete the identified acquisitions. In connection with its stock offerings in the United States, UTG made other materially false and misleading statements and omissions concerning its receipt and uses of cash, cash controls and documentation, corporate organization, and 2010 revenues and profits.

5. UTG failed to make and keep adequate books and records, and it failed to devise and maintain adequate internal accounting controls. For the year ending December 31, 2010, UTG failed to obtain an auditor's attestation to its assessment of internal control over financial reporting, and Jiang and Xie falsely certified that UTG's internal control over financial reporting were designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.

6. By engaging in the conduct described herein, UTG, Jiang and Xie violated or aided and abetted violations of the antifraud, reporting, books and records and internal controls, provisions of the federal securities laws.

7. The Commission brings this action seeking permanent injunctive relief to prevent future violations of the federal securities laws, civil penalties, disgorgement, prejudgment interest, officer and director bars, and other appropriate relief.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

9. Defendants directly or indirectly made use of the mails and the means and instrumentalities of interstate commerce in connection with the acts, practices, and courses of business described in this Complaint.

## DEFENDANTS

10. UTG is a Nevada corporation headquartered in Shenzhen, PRC. UTG's common stock is registered with the SEC pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)] and was listed on the New York Stock Exchange ("NYSE") in October 2009; UTG voluntarily delisted its stock from the NYSE in April 2012. UTG claims to operate a travel services business in China through a wholly-owned Chinese subsidiary called Shenzhen YuZhiLu Aviation Service Co., Ltd. ("YZL"). UTG claims to sell airline tickets, hotel rooms, and package tours by telephone, in person, and through the internet.

11. Jiang, age 52, is a Chinese national residing in China. She is UTG's former Chairman and Chief Executive Officer.

12. Xie, age 32, is a Chinese national residing in China. He is UTG's former Secretary and Chief Financial Officer and a former director.

## FACTUAL ALLEGATIONS

**UTG Failed to Disclose Risky Currency Exchange Transfers.**

13. YZL was created as a Chinese company purportedly in the business of selling airline tickets. In 2006 UTG was formed and became a public company in the U.S. through a reverse merger of YZL's parent company with a Nevada shell company. Following the reverse merger, UTG press releases announced the steady expansion of UTG's business in China. By 2010, UTG claimed to have acquired or created ten more subsidiaries: another airline ticketing company; a hotel reservations company; and eight package tour companies. After its formation as a U.S. issuer, UTG reported consistently positive financial results. Reported revenues grew from approximately $10 million in 2006 to approximately $153 million in 2010. Reported net income grew from approximately $2.5 million in 2006 to approximately $22 million in 2010. UTG never reported a quarterly operating loss. Following the reverse merger, UTG common stock traded over the counter in the U.S. In May 2009, UTG common stock was listed on the NYSE AMEX; in October 2009, UTG common stock was listed on the NYSE.

14. Even though it claimed to be generating ample cash, UTG in August 2008 conducted a $7.1 million private stock offering in the U.S. in August 2008 and conducted another $20 million private offering in December 2009. UTG conducted a $20 million public offering of its stock in the U.S. in June 2010. After expenses, UTG received approximately $44 million in total from the private and public offerings.

15. In the June 2010 offering document, UTG misrepresented its intended use of the offering proceeds as it did not use all of the funds raised to complete the identified acquisitions.

16. Shortly after each of the three offerings, UTG transferred most of the net proceeds, (about $41 million in total) to a bank account in Hong Kong in the name of "Universal Travel

4

Group (Hong Kong) Limited." UTG has never disclosed ownership of a Hong Kong subsidiary. Jiang had sole authority over this account. After some of the funds were converted to Hong Kong dollars, Jiang and Xie transferred all the funds out of the account. Between September 2008 and March 2011, all of these U.S. offering proceeds were sent to: (i) the Hong Kong bank accounts of fifteen unknown corporations; (ii) a PRC bank account also in the name "Universal Travel Group (Hong Kong) Limited"; and (iii) certain individuals who are registered with the government of Hong Kong as "remittance agents" or "money changers." The remittance agents further transferred the funds that they received from UTG to the bank accounts of: (i) twelve additional corporations; (ii) one of the corporations that had received money directly from UTG; and (iii) five individuals. The remittance agents did not exchange any U.S. or Hong Kong dollars for Renminbi; the agents did not send any money into China or to UTG.

17. Although certain company records reflect the return of the funds, UTG has not provided an audit trail establishing that the funds transferred out of the Hong Kong account by Jiang and Xie were returned to the company after being exchanged for Chinese Renminbi.

18. UTG's internal accounting controls did not require the written approval of anyone other than Jiang in order to transfer these funds out of the company.

19. UTG's use of at least 36 non-bank parties in order to exchange currencies created a substantial risk of theft or fraud. While the transfers were taking place UTG's liquidity was impaired because it was not able to access the funds. UTG's Forms 10-K for the years ending December 31 of 2008, 2009, and 2010, all signed by Jiang and Xie in their capacities as officers and directors of UTG, listed risk factors for UTG's business and for investors in UTG common stock. UTG did not disclose in these Forms 10-K, or anywhere, that it used non-financial institutions, including corporations and individuals, to exchange U.S. and Hong Kong currencies

5

into Renminbi. Nor did UTG disclose any of the risks of theft or fraud by the 36 or more parties involved in its currency exchange transfers. UTG did not disclose that its funds were ever temporarily unavailable.

**UTG Made Additional Fraudulent Disclosures; Failed to Make and Keep Required Books and Records; Failed to Devise and Maintain Sufficient Internal Controls; and Failed to Obtain an Auditor's Attestation to Its Assessment of Internal Controls.**

20. UTG facilitated its stock sales in the U.S. by making other materially false and misleading disclosures concerning the company's receipt and uses of cash, its cash controls and documentation, its corporate organization, and its 2010 revenues and profits.

21. In 2010, UTG received approximately fifty percent of its revenues in cash. In UTG's package tour line of business, about eighty-five percent of revenues were in cash. UTG did not deposit its cash revenues in to bank accounts at the end of the business day or on any other regular basis. Instead, UTG kept the cash on site, at more than 30 branch offices, and then paid out much of it to travel suppliers and employees. UTG did not prepare uniform records for cash transactions. UTG's two largest tour subsidiaries did not on a regular basis prepare purchase or sale invoices, which are the documents used to report and pay Value Added Tax to the PRC government. UTG's tour subsidiaries retained some sales and purchase receipts, but often could not associate the receipts with particular tours or vouchers. For many significant revenue generating tours, the only records UTG retained were a tour contract or a tour summary report.

22. UTG's failure to deposit cash revenues into banks, its handling of its cash revenues, its uses of cash to pay expenses, and its failure to create uniform documentation of cash transactions all created substantial risks of theft, fraud, and embezzlement. UTG's Form 10-K for the year ending December 31, 2010, listed the company's risk factors but did not disclose any risks related to the company's uses of, controls over, or documentation of cash and cash transactions.

23. During the audit of UTG's financial statements for the year ending December 31, 2010, UTG's auditor made a preliminary determination that it would need to attest to UTG's assessment of its internal controls, as required by Section 404(b) of the Sarbanes-Oxley Act [15 U.S.C. § 7262(b)]. A UTG representative, however, falsely told the auditor that UTG was exempt from the attestation requirement because two unrelated entities should be considered shareholder "affiliates" of UTG. The attestation was not done. UTG's Form 10-K for the year ending December 31, 2010, falsely stated that UTG was not an accelerated filer and that it did not need to obtain an auditor's attestation report on its internal control over financial reporting. As required by Section 302 of the Sarbanes-Oxley Act [15 U.S.C. § 7241], Jiang and Xie signed certifications for the year ending December 31, 2010. In these certifications, Jiang and Xie falsely stated that UTG's internal control over financial reporting were designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements.

24. Prior to June 2011, UTG falsely stated that it owned directly all eleven of its PRC operating subsidiaries. In fact, UTG transferred ownership of one PRC subsidiary to third parties in June 2007, and it transferred ownership of a second PRC subsidiary to third parties in April 2010. These two transferred PRC subsidiaries in turn owned six of the additional subsidiaries acquired by UTG, leaving UTG with only three directly owned subsidiaries. UTG transferred its subsidiaries pursuant to agreements designed to transfer the economic benefits of ownership to UTG. These agreements are typically used to manage restrictions under PRC laws which forbid non-Chinese entities from owning businesses in certain fields, including the domestic sale of airline tickets. This structure creates substantial risks for investors not present with outright ownership UTG did not disclose until June 2011 that eight of its eleven claimed subsidiaries were

7

connected to the company only through these types of agreements.

25.    In 2010 UTG reported that it made five acquisitions of package tour companies. UTG accounted for these acquisitions improperly by consolidating the financial statements of the acquired companies prematurely.   This improper accounting caused UTG to file Forms 10-Q for the periods ending March 31, 2010, June 30, 2010, and September 30, 2010, which contained materially inflated revenues and profits.

26.    There is a substantial likelihood that the disclosure of:   (i) UTG's currency exchange transfers of U.S. offering proceeds and the risks of those transfers; (ii) the risks of UTG's receipt of cash, uses of cash, inadequate controls over cash, and lack of documentation of cash transactions; (iii) the falsity of UTG's description of its corporate organization and the risks of that organization; and (iv) the falsity of UTG's revenues and profits in the first three quarters of 2010 would have been viewed by a reasonable investor as having significantly altered the total mix of available information.   A reasonable investor would have wanted to know each of the above-specified matters in making an investment decision concerning UTG.

## FIRST CLAIM FOR RELIEF

**UTG, Jiang and Xie Violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.**

27.    Paragraphs 1 through 26 are realleged and incorporated by reference.

28.    By engaging in the conduct described above, Defendants UTG, Jiang, and Xie, in the offer or sale of securities, by the use of means or instrumentalities of interstate commerce or the mails, directly or indirectly, (i) employed devices, schemes or artifices to defraud; (ii) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which

8

they were made, not misleading; or (iii) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers of UTG securities.

29. By engaging in the conduct described above, Defendants UTG, Jiang, and Xie, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

30. By engaging in the conduct described above, Defendants UTG, Jiang and Xie violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

**UTG Violated Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder.**

31. Paragraphs 1 through 30 are realleged and incorporated by reference.

32. UTG, whose securities were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], as detailed above, failed to file annual, current, and quarterly reports (on Forms 10-K and 10-Q) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

9

33. As described above, UTG failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets.

34. As described above, UTG failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary (i) to permit the preparation of financial statements in conformity with generally accepted accounting principles and (ii) to maintain accountability of assets.

35. Based on the foregoing, UTG violated Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13].

### THIRD CLAIM FOR RELIEF

**Jiang and Xie Aided and Abetted UTG's Antifraud, Reporting, Recordkeeping, and Internal Controls Violations; Jiang and Xie Violated Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13a-14 thereunder.**

36. Paragraphs 1 through 35 are realleged and incorporated by reference.

37. By engaging in the conduct described above, Defendants Jiang and Xie knowingly provided substantial assistance to and thereby aided and abetted UTG in its violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13].

38. By engaging in the conduct described above, Defendants Jiang and Xie knowingly circumvented or knowingly failed to implement a system of internal accounting controls, and knowingly falsified books, records, or accounts subject to Section 13(b)(2) of the Exchange Act, and therefore violated Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)].

39. By engaging in the conduct described above, Defendants Jiang and Xie, directly or indirectly, falsified or caused to be falsified books, records, or accounts subject to Section 13(b)(2)(A) of the Exchange Act, and therefore violated Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

40. By engaging in the conduct described above, Jiang and Xie, as UTG's CEO and CFO respectively, falsely certified in UTG's Form 10-K for the year ending December 31, 2010, that UTG's internal control over financial reporting were designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements.

41. Based on the foregoing, Jiang and Xie violated Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter final judgments:

A. Permanently enjoining Defendant UTG from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)]; and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13];

B. Permanently enjoining Defendant Jiang from violating, directly or indirectly, Section 17(a) of the Securities Act; Sections 10(b), 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]; Rules 10b-5, 13b2-1 thereunder [17 C.F.R. §§ 240.13b2-2 and 240.13b2-2]; and from aiding and abetting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)]; and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13];

      C.      Permanently enjoining Defendant Xie from violating, directly or indirectly, Section 17(a) of the Securities Act; Sections 10(b), 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]; and Rules 10b-5, 13b2-1 thereunder [17 C.F.R. §§ 240.13b2-2, and 240.13b2-2]; and from aiding and abetting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)]; and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13];

      D.      Imposing civil monetary penalties against Defendants UTG, Jiang, and Xie pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

      E.      Prohibiting Defendants Jiang and Xie from acting as officers or directors of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)];

      F.      Ordering Defendants UTG, Jiang and Xie to pay disgorgement and prejudgment interest; and

G.  Granting such further relief as the Court deems appropriate.

Dated: September 27, 2013

Respectfully submitted,

_____
Robert I. Dodge
(DC Bar No. 418914)
Attorney for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5949
Tel: (202) 551-4421

Of counsel:

Stephen Cohen
Melissa Robertson (DC Bar No. 396384)
Robert G. Wilson
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

13