UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALBERT SNELLINK,** *individually and on behalf of others similarly situated,*<br><br>**Plaintiff,**<br><br>v.<br><br>**UNIVERSAL TRAVEL GROUP, INC., et. al.,**<br><br>**Defendants.** | **Civil Action No. 11-2164 (KM)**<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

     **THIS MATTER** comes before the Court on three Motions: (1) a Motion by Defendant Acquavella, Chiarelli, Shuster & Co., LLP ("ACS") to vacate the default entered on January 23, 2015 [Dkt. No. 136]; (2) a Motion by Plaintiffs for leave to file a Third Amended Complaint naming Acquavella, Chiarelli, Shuster, Berkower & Co., LLP ("ACSB") as a Defendant in this action [Dkt. No. 145]; and (3) a Cross-Motion by ACSB to intervene in this action [Dkt. No. 149].[1] For the reasons set forth below, ACS' Motion to vacate the entry of default [Dkt. No. 136] is **GRANTED**, Plaintiffs' Motion for leave to file a Third Amended Complaint [Dkt. No. 145] is **GRANTED**, and ACSB's Motion for leave to intervene [Dkt. No. 149] is **DENIED as moot**.

---

[1] In response to Plaintiffs' Motion to amend, ACS and ACSB filed a Cross-Motion seeking: (1) leave to intervene; and (2) leave to file a joint brief on behalf of both ACS and ACSB in opposition to Plaintiffs' Motion to amend. Pursuant to Local Civil Rule 7.1(h) "[a] party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion, which shall not exceed 40 pages." Here, in contravention of the Local Civil Rules, ACS and ACSB filed a 17-page brief in support of their Motion to intervene and a 40 page brief in opposition to Plaintiffs Motion to amend instead of filing "a combined brief in support of the original motion and in support of the cross-motion." L. Civ. R. 7.1(h). However, in the interests of justice and finality the Court has considered the arguments raised by ACS and ACSB in both briefs.

I.      BACKGROUND AND PROCEDURAL HISTORY

The parties are intimately familiar with the history of this case and its underlying facts. Accordingly, the Court will not recite them at length. Plaintiffs filed their initial Complaint on April 15, 2011, asserting a securities class action against Defendants Universal Travel Group, Inc. ("UTA"), Jiangping Jiang, Yizhao Zhang and Jing Xie "on behalf of all persons or entities who purchased or otherwise acquired the securities of UTA during the period from January 19, 2010 to April 12, 2011." *See* Dkt. No. 1. Plaintiffs filed an Amended Complaint September 7, 2012, which named additional defendants and expanded the class period to March 12, 2009 through April 11, 2011. *See* Dkt. No. 52.

According to Plaintiffs, UTA is Nevada based company whose stock traded on the New York Stock Exchange and was marketed as an "online travel agency."[2] Dkt. No. 106 at ¶ 4. Plaintiffs allege that UTA, whose operations "take place entirely in China", claimed to offer "comprehensive and timely travel information and services . . . including easy payment function" and advertised its capability for the online booking of "air-ticketing, hotel reservations and packaged tours" when in fact "for most of the Class Period, it was literally impossible to book [travel arrangements] through UTA's website." *Id.* at ¶ 4, 7-8. In addition to the allegedly false statements regarding the nature and functionality of UTA's business, Plaintiffs claim that UTA vastly overstated its revenue and falsified its financial statements during the class period.

ACS was first named as a Defendant in this action when Plaintiffs' Second Amended Complaint was filed on May 1, 2014. *See* Dkt. No. 106. According to Plaintiffs, Defendant David Svoboda was the individual in charge of UTA's audits for the class period, with UTA's financial statements for 2008 audited by Svoboda and the firm of Morganstern, Svobada & Baer

---

[2] Plaintiffs have twice amended their Complaint in this action and Plaintiffs' Second Amended Complaint is Plaintiffs' operative pleading at this juncture [Dkt. No. 106].

("MSB") and UTA's financial statements for 2009 audited by Svobada at his new firm, ACSB. Plaintiffs claim that the audits of UTA's financial statements in 2008 by MSB and in 2009 by ACSB were accompanied by reports certifying that the audits had been conducted in accordance with the standards of the Public Company Accounting Oversight Board (the "PCAOB") and MSB and ACS "certified that UTA's financial statements were presented in accordance with generally accepted principles." Dkt. No. 106 at ¶ 13-14.

On November 21, 2013, the PCAOB issued an Order "censuring [ACSB], revoking ACSB's registration, and imposing a civil penalty in the amount of $10,000 upon ACSB" as a result of ACSB's misconduct in connection with three audits it performed in 2009, including ACSB's audit of UTA's financial statements. *See* Dkt. No. 90, Ex. 1. The PCAOB found that in conducting the three audits at issue, including the 2009 audit of UTA's financial statements, ACSB had "fail[ed] to comply with PCAOB rules, quality control standards" and had "violated Section 10A(g) of the Exchange Act and PCAOB rules and standards that require a registered public accounting firm to be independent of the firm's audit client throughout the audit and professional engagement period." *Id.* at ¶ 4. Specifically, the PCAOB's Order states that during audit of UTA, "ACSB failed to exercise due professional care and failed to obtain sufficient competent evidential matter to support its opinion on [UTA's] 2009 financial statements." *Id.* at ¶ 21. Plaintiffs promptly sought judicial notice of the PCAOB's Order and on April 3, 2014, Plaintiffs were granted leave to file an Amended Complaint.

Plaintiffs' Second Amended Complaint includes allegations related to Svoboda and ACSB's preparation and audit of UTA's 2009 financial statements. However, instead of naming Svoboda and ACSB as Defendants, Plaintiffs named Svoboda and ACS. According to Plaintiffs, ACS, instead of ACSB, was named as a Defendant in the Second Amended Complaint because

Plaintiffs believed that ACS was the continuation of ACSB. Plaintiffs assert that ACS was "formed by three of the same principals as ACSB", ACS' website "claimed it was a continuation of ACSB" and ACS operated out of the same building that ACSB had previously occupied. Dkt. No. 146 at p. 2-3. Upon the filing of the Second Amended Complaint, a Summons for ACS was issued and ACS was served on May 5, 2014.[3] *See* Dkt. Nos. 108, 111.

On January 14, 2015, after no response to the Second Amended Complaint had been filed by ACS or Svoboda, the Court directed Plaintiffs to "either request default against [D]efendant Svoboda and [ACS] within 14 days or show cause why its claims against those defendants should not be dismissed for lack of prosecution . . . ." On January 22, 2015 Plaintiffs requested the entry of default as to Svoboda and ACS and on January 23, 2015 default was entered as to both Defendants. *See* Dkt. No. 128. Subsequently, on March 13, 2015, ACS made its first appearance in this action and filed the present Motion to vacate the default entered against it. *See* Dkt. No. 136. Based upon the representations contained in ACS' Motion to vacate default that ACS was not a continuation of ACSB under a different name and that ACSB had instead dissolved and reincorporated under a different name, Plaintiffs filed the present Motion seeking leave to file a Third Amended Complaint naming ACSB as a Defendant.

## II.   DISCUSSION

### A. ACS' Motion to Vacate the Entry of Default [Dkt. No. 136]

ACS was served with the Summons and Second Amended Complaint naming it as a Defendant in this action on May 5, 2014. *See* Dkt. No. 111. Plaintiffs requested the entry of default as to ACS on January 22, 2015 and the Clerk entered default on January 23, 2015. *See* Dkt. Nos. 128, 129. On March 13, 2015, ACS filed the present Motion to vacate the entry of

---

[3] ACS' response to the Second Amended Complaint was due on May 27, 2015.

4

default. *See* Dkt. No. 136. In support of its Motion, ACS claims that it "had no involvement" in the actions alleged in Plaintiffs' Second Amended Complaint and that ACSB, a separate entity from ACS, was the entity responsible for the audit of UTA's 2009 financial statements and the misconduct alleged in connection with the audit. Dkt. No. 136 at p. 11. According to ACS, when ACSB dissolved in 2012, three of the named partners, Joseph Acquavella, Santo Chiarelli and Sam Shuster, formed ACS and "[t]he similarity in name between ACS and ACSB was due to the fact that three of name[d] partners stayed together in a new firm." *Id.*

ACS does not contend that it was not properly served with the Summons and Second Amended Complaint. Rather, ACS claims that it was not contacted by Plaintiffs or Plaintiffs' counsel after service and was not notified of the entry of default against it. *Id.* at p. 14. While ACS does not provide any explanation for its failure to respond to Plaintiffs' Second Amended Complaint, it claims that it made a "timely response" to the entry of default and that the "little delay" between the entry of default and its Motion to vacate default was a result of "communications between counsel" and "diligent efforts" to ensure insurance coverage prior to filing the present Motion. *Id.* at p. 19-21.  Plaintiffs do not oppose ACS' Motion to vacate default.[4] *See* Dkt. No. 138.

---

[4] Although Plaintiffs do not oppose ACS' Motion to set aside the entry of default, Plaintiffs request that in the event the default is vacated: (1) ACS be prohibited from filing a Motion to Dismiss; and (2) Plaintiffs be permitted to conduct discovery regarding (a) "whether the facts meet the test for veil piercing"; and (b) "whether the facts meet the test for successor liability." Dkt. No. 138 at p 7-8. The Private Securities Litigation Reform Act ("PSLRA") provides, in relevant part, that "[i]n any private action arising under this chapter, all discovery and other proceedings ***shall*** be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B) (emphasis added). Plaintiffs' request is not accompanied by any supporting authority or discussion as to whether the requested discovery is necessary to preserve evidence or prevent undue prejudice to Plaintiffs. Accordingly, Plaintiffs' request that ACS be prohibited from filing a Motion to Dismiss and for any prospective relief from the discovery stay that would result from ACS' filing of a Motion to Dismiss is DENIED.

The entry of default and default judgment is governed by Federal Rule of Civil Procedure 55. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because a default judgment prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984). Accordingly, the Third Circuit has clarified that, while "the entry of a default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." *Hritz,* 732 F.2d at 1181 (citations omitted); *see also $55,518.05 in U.S. Currency,* 728 F.2d at 194–95.

Pursuant to Rule 55(c), "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In exercising its discretion to vacate the entry of default, the Court must consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was a result of the defendant's culpable conduct." *Budget Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir. 2008) (citing *$55,518.05 in U.S. Currency,* 728 F.2d at 195).

Any doubts in this inquiry are "to be resolved in favor of the party moving to set aside the default judgment so that cases may be decided on their merits." *Ford v. Consigned Debts & Collections, Inc.,* No. 09–3102, 2010 WL 2758182, at *2 (D.N.J. July 12, 2010) (citing *$55,518.05 in U.S. Currency,* 728 F.2d at 194–95). "'[M]atters involving large sums should not be determined by default judgment if it can reasonably be avoided,' since 'the interests of justice are best served by a trial on the merits.'" *Livingston Powdered Metal, Inc. v. N.L.R.B.,* 669 F.2d

133, 136–37 (3d Cir. 1982) (quoting *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245 (3d Cir. 1951)).

### i. Meritorious Defense

The Third Circuit "consider[s] the meritorious-defense factor the 'threshold issue. . . .'" *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 522 (3d Cir. 2006) (quoting *Hritz,* 732 F.2d at 1181). The defendant is required to "'set forth with some specificity the grounds for his defense.'" *Id.* The court then "look[s] at the substance of that defense to determine whether it is meritorious." *Id.* (citation omitted). But the court "need not decide the legal issue' at this stage of review." *Id.* (quoting *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987)). Here, ACS argues that it had no involvement in the actions alleged in Plaintiffs' Second Amended Complaint and that ACSB, a separate entity from ACS, was the entity which conducted the audit of UTA's 2009 financial statements. While Plaintiffs contend that ACS is a mere continuation of ACSB, Plaintiffs have not presented sufficient evidence to lead the Court to the same conclusion. Accordingly, the Court finds that ACS' assertion that it was erroneously named by Plaintiffs instead of ACSB and that was not involved in any way with the 2009 audit or with any other activities in Plaintiffs' Second Amended Complaint, is enough to consider its defense meritorious at this phase of the litigation.

### ii. Culpable Conduct

To find a defendant's conduct culpable, "more than mere negligence [must] be demonstrated." *Hritz,* 732 F.2d at 1183. "Reckless disregard for repeated communications from plaintiffs and the court ... can satisfy the culpable conduct standard." *Id.* Culpable conduct, in this context, "is conduct that is taken willfully or in bad faith." *Hill v. Williamsport Police Dept.,* 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted). Here, although the Court notes that ACS

has failed to set forth any reason or justification for its failure to respond to the Second Amended Complaint or otherwise appear in this case until more than ten months after it was served, Plaintiffs have not alleged any culpable conduct on behalf of ACS. Accordingly, in the absence of evidence of the requisite willfulness or bad faith on behalf of ACS, the Court finds that ACS' failure to respond to the Second Amended Complaint does not warrant a refusal to set aside default. *See Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib.,* at *3 (E.D.Pa. Dec. 11, 2007) ("Even where neglect is inexcusable, and where the Court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of 'flagrant bad faith,' and 'callous disregard of responsibility.'") (citation omitted)).

### iii. Prejudice to Plaintiff

While the Court is mindful of Plaintiffs' desire to move this case along, "delay in realizing satisfaction or the fact that the plaintiff will have to prove its case on the merits are rarely sufficient to prevent a court from opening up a default." *Itche Corp. v. G.E.S. Bakery, Inc.,* 2008 WL 4416457 at *2 (D.N.J. Sept. 24, 2008) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656–57 (3d Cir. 1982)). Prejudice under this prong accrues due to a "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Id.* "[T]he inevitable dimming of witnesses' memories" is also recognized as a form of prejudice. *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir. 1984). Here, Plaintiffs do not contend that they will be prejudiced by vacating default and allowing ACS to respond to the Second Amended Complaint and there is no indication or assertion before the Court that any evidence has been lost or that Plaintiffs will have any increased difficulty in obtaining relevant discovery.

Accordingly, because the Court finds that ACS has set forth a meritorious defense, that ACS' conduct in failing to respond to the Second Amended Complaint it not culpable and that Plaintiffs will not suffer prejudice if ACS is permitted to respond to the Second Amended Complaint, ACS' Motion to vacate the entry of default is GRANTED.

### B. Plaintiff's Motion to Amend [Dkt. No. 145]

Based on ACS' assertion in its Motion to vacate default that ACS is not affiliated with ACSB and was not involved in the 2009 audit, Plaintiffs filed the present Motion seeking leave to file a Third Amended Complaint naming ACSB as a Defendant in this action based on its alleged conduct in connection with the 2009 audit of UTA's financial statements. In opposition to Plaintiffs' Motion to amend, ACS and ACSB contend that Plaintiffs' Third Amended Complaint is futile because (1) Plaintiffs' claims are untimely under both the applicable statute of repose and statute of limitations; and (2) Plaintiffs fail to plead the requisite elements of successor liability or fraud. Dkt. No. 150 at p. 1. In addition, ACS and ACSB assert that both ACS and ACSB "would be highly and unduly prejudiced by this amendment due to [P]laintiffs' recklessness" in "naming the wrong auditor entity and not even reciting why." *Id.*

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western*

9

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15.*" Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

ACS and ACSB claim that Plaintiffs "dramatically" delayed in moving to file the Third Amended Complaint to name ACSB, and in doing so have demonstrated bad faith. *See* Dkt. No. 150 at p. 28. The Court disagrees. Plaintiffs have explained the understandable confusion which led to the naming of ACS instead of ACSB in the Second Amended Complaint and Plaintiffs moved to amend to name ACSB within approximately two months of ACS' Motion to vacate the entry of default. It appears to the Court that any delay by Plaintiffs in naming ACSB as the allegedly correct entity resulted from ACS' failure to appear in this action for more than ten months after it was served with Plaintiffs' Second Amended Complaint.

Furthermore, "Delay alone will not constitute grounds for denial." *Bjorgung v. Whitetail Resort, LP,* 550 F.3d 263, 266 (3d Cir. 2008). Only if the delay is "undue, motivated by bad faith, or prejudicial to the opposing party," may a motion to amend may be properly denied. *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (quoting *Bjorgung,* 550 F.3d at 266). Here, although ACS and ACSB allege that Plaintiffs have acted with bad faith and have caused undue prejudice to ACS and ACSB in failing to name what ACS and ACSB assert is the correct entity, ACS and ACSB have failed to present any evidence of bad faith on behalf of Plaintiffs or undue prejudice to ACS or ACSB resulting from Plaintiffs' actions. Accordingly, the Court finds that Plaintiffs have not unduly delayed in bringing the

present amendment or acted with bad faith or any dilatory motive and that ACS and ACSB have not suffered any undue prejudice as a result of Plaintiffs' moving to amend.

ACS and ACSB also oppose Plaintiffs' amendment on the grounds that the addition of ACSB would be futile because: (1) Plaintiffs' claims are untimely under both the applicable statute of repose and statute of limitations; and (2) Plaintiffs fail to plead the requisite elements of successor liability or fraud. Dkt. No. 150 at p. 1. However, neither party has standing to oppose Plaintiffs' Motion of the grounds of futility. ACS and ACSB have repeatedly asserted that they are entirely separate entities and that ACS is not a continuation of ACSB. Therefore, ACS, as a current party "'unaffected by [the] proposed amendment' [does] not have standing to assert claims of futility on behalf of proposed defendants." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (citations omitted). "Rather, current parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay and/or prejudice." *Id.* at *2.

Any argument of futility by ACSB is similarly improper because "[p]roposed defendants do not have standing to oppose' a motion to amend 'because they are not yet named parties.'" parties[.]" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P .C.,* 246 F.R.D. 143, 146 n. 1 (E.D.N.Y.2007)). Accordingly, because neither ACS nor ACSB has standing to oppose Plaintiffs' Motion to amend on the basis of futility, the Court rejects futility as a basis to deny Plaintiffs' pending Motion for leave to file a Third Amended Complaint.[5] Based on the foregoing, Plaintiffs' Motion for leave to file a Third Amended Complaint naming ACSB as a Defendant in this action is GRANTED.

---

[5] ACSB may challenge the sufficiency of Plaintiffs' pleading by way of dispositive motion in accordance with the Federal Rules of Civil Procedure after Plaintiffs effectuate service of the Third Amended Complaint.

### C. ACSB's Cross-Motion to Intervene [Dkt. No. 149]

In light of the Court granting Plaintiffs' Motion to amend the Complaint to name ACSB as a Defendant in this action, ACSB will soon become a party to this case and ACSB's Cross-Motion to intervene in this matter [Dkt. No. 149] is therefore DENIED as moot.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 4th day of November, 2015,

**ORDERED** that Acquavella, Chiarelli, Shuster & Co., LLP ("ACS")'s Motion to vacate the entry of default [Dkt. No. 136] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Motion for leave to file a Third Amended Complaint [Dkt. No. 145] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Third Amended Complaint shall be filed within **seven (7) days** of the entry of this Order; and it is further

**ORDERED** that Acquavella, Chiarelli, Shuster, Berkower & Co., LLP ("ACSB")'s Cross-Motion to intervene [Dkt. No. 149] is **DENIED as moot**.


    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**